**FIREFIGHTERS LOCAL NO. 77, Respondent,**

v.

**CITY OF ST. JOSEPH, MISSOURI, Respondent/Appellant,**

**and**

**Missouri Local Government Employees Retirement System, Appellant/Respondent.**

**No. WD 43126.**

Missouri Court of Appeals, Western District.

Oct. 8, 1991.

Rehearing Denied Nov. 26, 1991.

Robert L. Hawkins, Jefferson City, for appellant/respondent.

George Scott Murray, St. Joseph, for respondent/appellant.

Thomas R. Summers, St. Joseph, for respondent.

Before FENNER, P.J., LOWENSTEIN, C.J., and ULRICH, J.

FENNER, Presiding Judge.

This case was initiated by respondent, Firefighters Local No. 77, (Firefighters) filing a petition in the circuit court seeking a declaratory judgment determining the effect of § 87.025, RSMo 1986,[1] upon an agreement entered into between appellant Missouri Local Government Employees Retirement System, (LAGERS) and respondent and cross-appellant, City of St. Joseph, Missouri, (City), whereby LAGERS had agreed to administer the St. Joseph Fireman's Pension Plan (Local Pension Plan). Firefighters also sought to enjoin (LAGERS) from withdrawing from further administration of the Local Pension Plan as well as to enjoin the City from resuming administration of said plan.

The trial court entered an order enjoining LAGERS from transferring administration of the Local Pension Plan to the City. LAGERS appeals and the City cross-appeals which cross-appeal is in reality a response to the arguments presented by LAGERS.

The pertinent facts are not in dispute and reflect that prior to May 31, 1988, the Local Pension Plan was administered by the City under Chapter 87, RSMo. LAGERS is a state-created public pension plan operating

---

**1.** All statutory references are to RSMo 1986, unless otherwise specifically stated.

pursuant to the statutory provisions set forth at §§ 70.600—70.755. In early 1987, negotiations began between the city administration, the firefighters of the City, and LAGERS to transfer all assets of the Local Pension Plan to LAGERS for future administration, and to place all "fire employees"[2] hired thereafter within the LAGERS system.

On May 31, 1988, the City passed Ordinance No. 1827, which authorized the transfer of all assets of the Local Pension Plan to LAGERS. The ordinance provided that all fire employees hired after July 1, 1988, were to be covered by the provisions of §§ 70.600—70.755 relating to the LAGERS retirement system. Various benefit programs are provided by LAGERS and the ordinance specified that benefit program L–6 would be applicable to fire employees hired after July 1, 1988.[3]

Ordinance No. 1827 also stated that all fire employees who were active participants in the Local Pension Plan would be able to make a one time, irrevocable election to either continue participation under the benefit provisions of the Local Pension Plan or exchange their existing accrued benefits for prior and future service coverage under the LAGERS L–6 benefit program. The election was to be made no later than June 1, 1988. The ordinance specified that benefits provisions applicable to active employees who elect continued participation under the Local Pension Plan provisions shall not be subject to change in the future and noted "[a]ttached is a summary of those plan provisions." The attachment referenced here consisted of a copy of Chapter 87, RSMo, which was identified as "a summary of those plan provisions". Also attached to the ordinance was a Resolution (No. 8760) passed by the City in January of 1988 certifying to LAGERS that the Local Pension Plan was governed by §§ 87.005—87.105, and certifications to

that effect signed by the president of the Fire Pension Board, the Mayor, the City Manager, the City Clerk, and an Assistant City Attorney. Further attached was a resolution from the Board of Trustees of the Fire Pension Fund approving the transfer.

Ordinance No. 1827 further provided that benefit payments to all present benefit recipients and future beneficiaries of present benefit recipients of the Local Pension Plan would be payable by LAGERS. The ordinance provided that once the terms of the ordinance were adopted by the City and LAGERS, they could not be rescinded.

On June 23, 1988, the Board of Trustees of LAGERS accepted the terms of Ordinance No. 1827. The assets of the Local Pension Plan were transferred to LAGERS and election forms were submitted to the members of the Local Pension Plan. Sixty-three members elected to continue under the benefit provisions of the Local Pension Plan and seventy-one members elected to convert to LAGERS. At the time of the transfer to LAGERS, all 134 members were assessed 7% of their salary as their individual contribution toward their pension benefits. This 7% was withheld from salary and paid to LAGERS in addition to the City's contribution to LAGERS.

On June 26, 1989, the City adopted Ordinance No. 691 reducing the individual contribution to LAGERS for all fire employees from 7% to 4% with the City paying the other 3% on behalf of the employees. LAGERS advised the City that reducing the individual contribution from 7% to 4% for fire employees who had elected to continue their benefits under the terms of the Local Pension Plan was in violation of LAGERS' agreement with the City and in violation of state law. LAGERS stated that unless the City amended its ordinance to provide that those fire employees who had elected to retain benefits under the

---

2. The parties, in their negotiations and in the relevant ordinances, referred to the affected employees as "fire employees."

3. Section 70.655 specifies the benefit programs available through LAGERS. Benefit program L–6 is covered by § 70.655.1(5).

Local Pension Plan were to be assessed the entire 7% as an individual contribution, that LAGERS would withdraw from administration of the previous fire pension plan and return monies and assets of that plan to the City. LAGERS gave the City until September 8, 1989 to comply.

It was and is the position of LAGERS that the pension provisions for those fire employees who elected to retain the benefit provisions under the Local Pension Plan continued to be controlled by Chapter 87 relating to Firemen's Retirement and Relief Systems as opposed to §§ 70.600—70.-755 relating to LAGERS. LAGERS takes the position that the proposed reduction in individual contribution from 7% to 4% violates § 87.025 which mandates that members of a fire pension plan subject to that section shall be assessed "at least 5% but not more than 10%" of their salary to be deducted and withheld from their pay.

LAGERS argues that its agreement with the City was that LAGERS' administration of pension funds and benefits for fire employees electing benefits under the Local Pension Plan was subject to the provisions of Chapter 87. When the City chose to deviate from the requirements of § 87.025, the City was in violation of the terms of their agreement according to LAGERS. LAGERS claims that it is no longer bound by the agreement to administer the funds and provide benefits for those fire employees who elected to retain benefits under the Local Pension Plan and that it is entitled to return those funds and administration thereof to the City.

In its first point on appeal, LAGERS argues that joinder of the City as a defendant was pretensive in that the City had at all times a joint interest with the Firefighters. LAGERS argues that since joinder of the City as a defendant was pretensive, venue in Buchanan County was improper and the trial court lacked jurisdiction.

Section 507.030 provides that, in matters other than class actions, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants; and, when a person who should be joined as a plaintiff refuses to do so, or his consent cannot be obtained, he may be made a defendant.

Section 508.050 provides that suits against municipal corporations as defendants or co-defendants shall be commenced only in the county in which the municipal corporation is situated.

■ The burden of proof is upon LAGERS to support its allegation of pretensive joinder. *Wadlow by Wadlow v. Lindner Homes, Inc.,* 722 S.W.2d 621, 624–25 (Mo. App.1986). The test is an honest belief at the time of filing of the petition that venue was proper; and, based upon the law and evidence, that a justiciable claim existed against the party joined. *State ex rel Coca–Cola v. Gaertner,* 681 S.W.2d 445, 447 (Mo. banc 1984).

■ Lagers has not shown that the Firefighters lacked an honest belief at the time of filing that venue was proper. LAGERS advised the City that if the City did not amend Ordinance No. 691, reducing the individual contribution rate for members participating under the Local Pension Plan by September 8, 1989, that LAGERS would withdraw from administering the Local Pension Plan and return the assets and records to the City. The City took no action to amend Ordinance No. 691 and there was no resolution of the problem that LAGERS perceived as being created by the City adopting the Ordinance. On September 6, 1989, two days before the deadline imposed against the City by LAGERS, Firefighters filed the petition herein in an effort to protect the financial interests of its affected members. In the Firefighters' opinion, its members would have been adversely affected by the City allowing LAGERS to withdraw from administration of the Local Pension Plan and return the same to the City. Firefighters was of the opinion that the Local Pension Plan would be inadequately funded and administered if returned to the City.

The circumstances existing at the time of the filing of the petition reflect an honest belief by the Firefighters that the City was acting in a fashion that was adverse to its interests.

LAGERS' first point is denied.

In its second point, LAGERS argues that the trial court lacked jurisdiction to enter its judgment because the individual firefighters affected by the matter in controversy were indispensable parties. LAGERS argues that the Firefighters failed to comply with Rule 52.10.

Rule 52.10 provides as follows:

An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 52.08(d), and the procedure for dismissal or compromise of the action shall correspond with that provided in rule 52.08(e).

Nothing in this Rule shall be construed to affect the rights or liabilities of labor unions to sue or be sued.

■ Rule 52.10 allows a nonjural entity, such as Firefighters, an unincorporated association, which entity is otherwise without capacity, to sue and be sued. *State v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99, 118 (Mo.App.1984). Rule 52.10 treats the unincorporated association as a class to give entity treatment to the association when for formal reasons it cannot sue or be sued as a jural person. *Id.* Rule 52.10 does not require that notice be given to individual members of an association. It is only required that the interests of the association and the members be fairly and adequately protected. In this regard, the court may within its discretion make appropriate orders requiring joinder or notice to parties as the fair conduct of

the action requires. *Id.* at 119. The interests of the association and its members are adequately represented when the interests of the party or parties represented are compatible and not antagonistic to the absent members. *Id.* at 123.

■ The President of Firefighters testified that the action was duly authorized by the Executive Board of Firefighters and that not taking action would have resulted in prejudice to Firefighters and its members. The decision of the Executive Board to file suit was reported to the members of Firefighters and no objection was registered by any member. The record reflects that the interests of Firefighters and its members were compatible. It was, therefore, not necessary for the individual members of Firefighters affected by this action to be joined as indispensable parties.

LAGERS second point is denied.

In its third point, LAGERS argues that the City agreed to be bound by the minimum individual contribution requirements of § 87.025 and that the City breached its agreement when it passed Ordinance No. 1651 reducing the minimum individual contribution from 7% to 4%. LAGERS argues this breach entitled it to rescind its agreement to administer the Local Pension Plan and that the trial court erred by enjoining it from withdrawing from administration of the Local Pension Plan.

■ In a court-tried case, if the trial court reached a correct result, the decision will be affirmed. The decision will not be disturbed because the trial court gave a wrong or an insufficient reason therefor. *Ashline v. Director of Revenue*, 707 S.W.2d 432, 433 (Mo.App.1986).

■ The cardinal rule in interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. A court will not resort to construction where the intention of the parties is expressed in clear and unambiguous language for there is nothing to construe. *Executive Hills Home Builders, Inc. v.*

*Whitley,* 770 S.W.2d 507, 508–09 (Mo.App. 1989).

 The relief of recision, as sought by LAGERS for the alleged breach of their agreement with the City, was in conflict with the clear language of Ordinance No. 1827, as agreed to by LAGERS that "[o]nce adopted, this agreement may not be rescinded". Accordingly, even if LAGERS were found to be correct in its argument that the City's actions were in conflict with § 87.025, the relief in accordance with their agreement would be to force compliance and not to rescind the agreement on that basis.

The trial court did not err by enjoining LAGERS from withdrawing from administration of the Local Pension Plan on the grounds presented by LAGERS that Ordinance No. 1651 was in conflict with § 87.-025 because LAGERS had agreed not to seek recision of the contract.[4]

The judgment of the trial court enjoining LAGERS from withdrawing its administration of the Local Pension Plan on the basis of the issues as addressed herein is affirmed.

All concur.

---

**4.** The ability of LAGERS to compel the City to comply with § 87.025 at the present time needs no further analysis because the conflict that existed between the City and LAGERS when this proceeding began has been eliminated by the legislature's amendment of § 87.025. Section 87.025 Cum.Supp.1990, effective April 30, 1990, now provides that members of a fire pension plan subject to the section shall be assessed "at least 1% but not more than 10%" of their salary to be deducted and withheld from their pay.

It is further noted that this opinion does not address the validity of the agreement between LAGERS and the City in regard to LAGERS assuming responsibility for administration of the Local Pension Plan and providing benefits under said Plan as had been provided prior to LAGERS assuming responsibility for administration of said Plan. This was not an issue properly presented to or decided by the trial court.