

## MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| THE SUNSHINE AND GOVERNMENT ACCOUNTABILITY PROJECT, | ) ) ) | |
| Appellant, | ) ) | WD86212 |
| v. | ) ) | OPINION FILED: |
| MISSOURI HOUSE OF REPRESENTATIVES ET AL., | ) ) ) | March 5, 2024 |
| Respondents. | ) ) ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Jon E. Beetem, Judge**

**Before Division Two: Janet Sutton, Presiding Judge,**
**Alok Ahuja, Judge, and Mark D. Pfeiffer, Judge**

Mark Pedroli[1] appeals from the judgment entered by the Circuit Court of Cole County

entering summary judgment in favor of the Missouri House of Representatives[2] (State

---

[1] We refer to appellant Mark Pedroli as Pedroli for the remainder of the opinion as the notice of appeal in this case lists Mark Pedroli as the appellant. We note that Pedroli has improperly used his name interchangeably with an unincorporated association, the Sunshine & Government Accountability Project, in this appeal as the appellant.

[2] The underlying suit involved the Missouri House of Representatives, Dana Miller in her official capacity as Chief Clerk of the Missouri Representatives and Custodian of Records, Jean Evans in her capacity as a former Missouri State Representative and Custodian of Records for her office and Rob Vescovo, in his capacity as the Majority Floor Leader and Custodian of Records for his office. We refer to these defendants collectively as State Defendants.

Defendants) and denying Pedroli's motion for partial summary judgment.  The trial court entered summary judgment for State Defendants on Pedroli's claims for a declaratory judgment that House Rule 127 was unconstitutional and that State Defendants violated the Sunshine Law, section 610.010 *et seq*,[3] (the Sunshine Law) by concealing open records including constituent email and postal addresses contained in requested records.  Although State Defendants argued that Pedroli lacked standing to pursue his claims in their motion for summary judgment, the trial court's judgment did not address whether Pedroli had standing, but instead addressed the merits of the claims.

On appeal, Pedroli contends that the trial court erred in granting State Defendants summary judgment on his claims because he contends House Rule 127 violates the Missouri Constitution which expressly provides that the House of Representatives is subject to the Sunshine Law.[4]  We conclude that Pedroli did not have standing to pursue his claims and therefore, the trial court did not have authority to determine the case's merits and grant summary judgment to State Defendants.  We reverse and remand with directions for the trial court to dismiss Pedroli's second amended petition without prejudice.

**Factual and Procedural Background**

On January 15, 2019, the Missouri House of Representatives adopted the "Rules of the House of Representatives, 100th General Assembly" containing Rule 127 which read as follows:

> Members may keep constituent case files, and records of the caucus of the majority or minority party of the house that contain caucus strategy, confidential. Constituent case files include any correspondence, written or electronic, between a member and a constituent, or between a member and any other party pertaining to a constituent's grievance, a question of eligibility for any benefit as it relates to

---

[3]  All statutory references are to RSMo 2016, as supplemented through the date of the Sunshine Law requests.

[4]  As discussed *infra*, Pedroli's sole point on appeal violates Rule 84.04(d)(1).

2

a particular constituent, or any issue regarding a constituent's request for assistance.

On April 2, 2019, an email was sent from "sunshine@pedrolilaw.com" to various "@house.mo.gov" email addresses. Attached to the email was a letter dated March 2, 2019.

The letter began:

> Dear Missouri Elected Official,
> I am requesting records, on behalf of Pedroli Law, LLC and the Sunshine and Government Accountability Project, pursuant to the Missouri Sunshine Law, RSMo Chapter 610. I am investigating the misappropriation of constituent identities for the purpose of improperly influencing elected officials. My client's name, address, and identity was misappropriated and used to generate communications to elected officials in an attempt to improperly influence legislation related to joinder, venue, and more broadly "tort reform."

The letter requested the following records:

> 1. [A]ll emails received by you in the last two years from a constituent and/or someone purporting to be a constituent wherein the subject line of the email states: a) "Keep Out-of-State Lawsuits Out of Missouri Courts" and/or b) "unclog Missouri courts[,]" and all emails wherein the body of the email contains the following words or phrases: c) "joinder" d) "venue" e) "$4.7 billion[.]"
> 2. Your responses to the above emails, all email replies to your response, and the remainder of the email exchange.

The letter further stated that the "information that the Sunshine Project obtains through this request will be used to advance the public interest (not to mention in the interest of every elected official)." The request was signed by "Mark Pedroli, Esq."

In early April and May 2019, responses were emailed to Pedroli at sunshine@pedrolilaw.com. The responses included PDFs of emails but, pursuant to House Rule 127 and Section 610.021(14), the email and postal address of each constituent were redacted.[5] Pedroli was not billed for fees associated with preparing the responses. The response from

---

[5] Representative Rob Vescovo also redacted the constituent's telephone number from the response.

senior counsel, on behalf of Representative Jean Evans, who had resigned from the House in February 2019, also indicated that "[i]f you represent any of the persons who presumably sent these emails, please contact me and we can discuss what additional information we may be able to provide."

Pedroli requested further explanation regarding the redactions. Senior counsel for the House of Representatives provided additional information regarding the grounds for the redactions, specifically identifying House Rule 127, Section 610.021(14), and 610.021(22) as grounds for redactions. Senior counsel again advised Pedroli that if he could verify which, if any, of the constituents he represented in his investigation, "we may be able to provide further assistance" to Pedroli.

In October 2019, a petition was filed by a plaintiff identified as the "Sunshine and Government Accountability Project," against Defendants Missouri House of Representatives, Clerk of the House Dana Miller, Representative Jean Evans, and John Does 1-20. The petition asserted two claims for relief, first, for declaratory judgment that House Rule 127 was unconstitutional and could not be enforced, and second, that State Defendants knowingly violated the Sunshine Law by concealing open records including constituent email and postal addresses contained in the requested records. The petition affirmatively stated that the plaintiff, the "Sunshine and Government Accountability Project," was an unincorporated association.

State Defendants filed a motion to dismiss, arguing that the petition should be dismissed because the only listed plaintiff was the Sunshine and Government Accountability Project (the Project), an unincorporated association, which lacks standing and legal capacity to bring suit on all counts in that the Project failed to comply with the requirements of Rule 52.10 because it

failed to designate any members as representative parties.[6] State Defendants also contended that the Project was not a "person" who could seek judicial enforcement under section 610.027. Finally, State Defendants moved for Jean Evans to be dismissed from the action because Jean Evans resigned from the House of Representatives in February 2019 and was not a member of the House at the time the records request was made in April 2019. It appears, from a docket entry, that the trial court allowed seven days for an amended pleading to be filed in the case.

In late March 2020, the Project filed a motion for leave to file an amended petition. The motion requested leave to substitute Mark Pedroli as the plaintiff "proceeding on behalf of the Project in the action." Subsequently, an amended motion for leave to file a first amended petition was filed, requesting leave to substitute "Mark Pedroli as the Plaintiff, Founder of the Sunshine and Government Accountability Project." The first amended petition was filed requesting the same relief in both counts, this time listing Mark Pedroli as the plaintiff, a resident of St. Louis County, Missouri. The first amended petition also added Representative Rob Vescovo, Majority Floor Leader, as a defendant and eliminated all John Doe defendants.

State Defendants filed another motion to dismiss Pedroli's first amended petition. The motion to dismiss included arguments that Pedroli was not a real party in interest under Rule 52.01, he lacked standing on both counts, and both counts failed to state claims upon which relief could be granted. The trial court sustained State Defendant's motion to dismiss on count one, and granted Pedroli thirty days to amend his pleadings to demonstrate standing and if he failed to

---

[6] "Rule 52.10 allows a non-jural entity . . . an unincorporated association, which entity is otherwise without capacity, to sue and be sued." *Firefighters Local No. 77 v. City of St. Joseph, Missouri,* 822 S.W.2d 866, 870 (Mo. App. W.D. 1991). *See also Sommer v. City of St. Louis,* 631 S.W.2d 676, 681 (Mo. App. E.D. 1982). Rule 52.10 provides, in relevant part: "An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members . . . ."

do so, the trial court stated the count would be dismissed with prejudice. The trial court denied the motion to dismiss on count two.

In January 2021, a second amended petition was filed, and the plaintiff was again identified as "Mark Pedroli, Founder of the Sunshine and Government Accountability Project." It alleged that "plaintiff Mark Pedroli is a resident of St. Louis County, Missouri." The second amended petition also alleged that "[o]n April 2, 2019[,] Plaintiff served a Sunshine request to the Missouri House of Representatives . . . seeking emails from constituents related to an investigation undertaken by Plaintiff into the misappropriation of constituent's identities by a third party/s." Attachments to the second amended petition included exhibits such as the email and request as Exhibit A and Exhibit B.

In June 2021, State Defendants filed a motion for summary judgment and statement of uncontroverted material facts. State Defendants argued that they were entitled to summary judgment as a matter of law because the uncontroverted material facts demonstrated that House Rule 127 was not contrary to Article III, § 19 of the Missouri Constitution and that State Defendants complied with the Sunshine Law.

State Defendants further argued they were entitled to summary judgment because Pedroli lacked standing to sue on both counts. State Defendants maintained that Pedroli alleged he had a "client" with a specific interest in the records "because their name was misappropriated in the emails" but "the client" was not the named plaintiff in the lawsuit, and Pedroli did not identify "the client" in the second amended petition.

Further, State Defendants argued that Pedroli did not allege or establish that even if State Defendant's response to the request showed the name of Pedroli's "client," why a redaction of such "client's" email or postal address would impede Pedroli's investigation or Pedroli's ability

6

to contact his own "client." Finally, State Defendants argued that Rule 52.10 requires that every civil action be prosecuted in the name of the real party in interest, and that because Pedroli did not make the records request on his own behalf, but for a "client," that Pedroli was not the real party in interest.[7]

In October 2021, Pedroli filed a motion for partial summary judgment and statement of uncontroverted material facts. Pedroli sought summary judgment on count one for declaratory judgment and partial summary judgment on count two, seeking only a finding that State Defendants violated the Sunshine Law, but did not seek summary judgment on the issue of whether the Sunshine Law violations were knowing and purposeful.

Pedroli argued that he had standing to bring a declaratory judgment action to challenge the constitutionality of House Rule 127. Pedroli argued that he articulated sufficient personal interests to establish standing for several reasons. Pedroli contended that "he" submitted the records request, that Pedroli frequently used open records requests as an attorney to investigate potential claims before filing lawsuits, that Pedroli was a Missouri resident, and therefore, Pedroli maintained that he established sufficient "personal interests" to establish standing to pursue his action.

Pedroli argued that he was entitled to summary judgment on count one because he contended that House Rule 127 violated Article III, § 19(b) of the Missouri Constitution.[8]

---

[7] State Defendants also argued that Representative Jean Evans was entitled to summary judgment because she could not have violated Article III, § 19 of the Missouri Constitution or the Sunshine Law because she resigned from the House of Representatives in February 2019, and was not a member of the Missouri House of Representatives or the custodian of records for any of the requested records at the time of Pedroli Law, LLC's request in April 2019.

[8] Article III, § 19(b) of the Missouri Constitution provides:

Legislative records shall be public records and subject to generally applicable state laws governing public access to public records, including the Sunshine

Finally, Pedroli argued that he was entitled to summary judgment on count two as there were no genuine disputes of material fact that State Defendants failed to provide Pedroli with unredacted responses to the Sunshine Law requests.

After briefing on the motions, the trial court issued its judgment granting summary judgment in favor of State Defendants on all claims and denying Pedroli's motion for partial summary judgment. The trial court found that the amendment to Article III, § 19 at best created a constitutional limit preventing the General Assembly from modifying section 610.010(6) to exclude legislative records from the definition of public records or a court from interpreting section 610.010(6) as not including legislative records as public records. The trial court stated that nothing in Article III, § 19(b) prevented the General Assembly from closing these records, either directly or indirectly by House rule. The trial court concluded that because the plain language of Article III, § 19(b) did not conflict with the plain language of Article III, § 18, which allows each chamber to determine the rules of its own proceedings, State Defendants were entitled to judgment as a matter of law, and that the "political question doctrine" allowed no other result. The trial court did not rule on the standing issue raised by State Defendants in its judgment.

---

Law. Legislative records include, but are not limited to, all records, in whatever form or format, of the official acts of the general assembly, of the official acts of legislative committees, of the official acts of members of the general assembly, of individual legislators, their employees and staff, of the conduct of legislative business and all records that are created, stored or distributed through legislative branch facilities, equipment or mechanisms, including electronic. Each member of the general assembly is the custodian of legislative records under the custody and control of the member, their employees and staff. The chief clerk of the house or the secretary of the senate are the custodians for all other legislative records relating to the house and the senate, respectively.

A notice of appeal was filed with the Supreme Court of Missouri and the appeal was subsequently transferred to this Court. Additional facts necessary to the disposition of the case will be included below.

## Legal Analysis

This Court struck Pedroli's initial brief for Rule 84.04 violations including non-compliance with Rule 84.04(d) which governs points relied on. We advised Pedroli of the violations in an order and notice, granting Pedroli fifteen days to file an amended brief correcting the briefing violations. Pedroli filed an amended brief but did not revise his sole point relied on in any manner to comply with Rule 84.04(d)(1), instead inserting only one word to fix an apparent typographical error. Unlike the dissent, the majority opinion chooses not to ignore or sanction a party's indifference to this Court's own orders and cannot bestow a benefit on a party for ignoring such order and notice.

Pedroli's sole point on appeal reads as follows:

> The trial court erred in granting summary judgment against Appellant Sunshine and Government Accountability Project with respect to Count I and Count II because House Rule 127 Violates the Missouri Constitution and Article III, sections 19(b)-(c) which Expressly Provides that the House of Representatives is Subject to the Provisions of Chapter 610, MO. REV. STAT. ("the Missouri Sunshine Law").[9]

---

[9] The caption in the trial court's judgment incorrectly lists the "Sunshine and Government Accountability Project" as the plaintiff. However, the judgment's language refers to the "plaintiff" and not the Project. The plaintiff in the underlying action was Mark Pedroli, not the Project. Pedroli then perpetuates this error in his point relied on by stating, in part, that "[t]he trial court erred in granting summary judgment against Appellant Sunshine and Government Accountability Project."

Under the single point relied on Pedroli has included several subpoints, some appearing to support his point relied on and some containing completely separate arguments.[10]

Rule 84.04(d)(1) requires each point relied on to: "(A) Identify the trial court ruling or action that the appellant challenges; (B) State concisely the legal reasons for the appellant's claim of reversible error; and (C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."

Pedroli's point relied on fails to conform to the template outlined in Rule 84.04(d)(1). Pedroli's point relied on does not state "wherein and why" the trial court erred and fails to identify what legal reasons he relies upon in seeking reversal of the trial court's ruling and how those legal reasons support his claim of reversible error. A point relied on with such failures does not comply with Rule 84.04 and preserves nothing for our review. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022).

Further, Pedroli's contention that the "trial court erred in entering summary judgment" is not a proper point relied on under Rule 84.04(d). "When an appellant makes the entire judgment one error and lists multiple grounds therefor, the result is that the point contains multiple legal issues. Separate issues should be stated in separate points relied on." *Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279, 283 n.3 (Mo. App. E.D. 1999). *See also R.M. v. King*, 671 S.W.3d 394, 398 (Mo. App. W.D. 2023). For example, one such "trial court ruling or action" Pedroli could have included in a point relied on would have been that the trial court erred in finding House Rule 127 constitutional as to Count I. In *King*, contrary to what the dissent asserts, this Court did not hold that a point relied on that stated, "[T]he court erred in granting the

---

[10] As the Eastern District of this Court has said, with regard to subpoints on appeal, "[w]e do not encourage this practice. Separate issues should be stated in separate points." *In re Marriage of Cohen*, 884 S.W.2d 35, 37 n.1 (Mo. App. E.D. 1994).

*ex parte* order of protection and in granting the 'order of protection'" complied with Rule 84.04(d). Instead, we said that two of the points "*arguably* identif[ied] the trial court ruling" that was challenged. *King*, 671 S.W.3d at 398 (emphasis added). We ultimately concluded that the points violated Rule 84.04(d) and we did our "best" to decipher the appellant's claims. *Id.* We did not hold that the point relied on was compliant with Rule 84.04(d). *Id.* at 398.

> The error contemplated by Rule 84.04(d) in a court-tried case is not the judgment itself but the trial court's actions or rulings on which the adverse judgment is based, such as explicitly or implicitly making or failing to make a certain factual finding, applying or failing to apply a particular rule of law, taking or failing to take a certain procedural action, etc.

*Wheeler*, 999 S.W.2d 283 n.3 (citing *Thummel v. King*, 570 S.W.2d 679, 685–688 (Mo. banc 1978)).[11]

An appellant's failure to comply with Rule 84.04(d)'s requirements is a sufficient basis for this Court to dismiss a point on appeal. *Hicks v. Northland-Smithville*, 655 S.W.3d 641, 647 (Mo. App. W.D. 2022). Although we do not condone the briefing violations here, if the deficiencies in the brief do not impede our ability to discern the claims being made, this Court may choose to exercise our discretion to review, which we do in this case. *See Bethman v. Faith*, 462 S.W.3d 895, 900 (Mo. App. E.D. 2015) (stating that when Rule 84.04(d) violations are not so serious to impede appellate review, an appellate court may exercise its discretion to consider

---

[11] We disagree with the dissent's characterization of *Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279 (Mo. App. E.D. 1999), that the problem with the point relied on was not that the point identified "the judgment" as the challenged ruling, but that it contained multiple legal issues. *Wheeler* specifically stated that the contention that the "trial court erred in entering summary judgment" for multiple unrelated reasons was not a proper point relied on under Rule 84.04(d), and that "[w]hen an appellant makes the entire judgment one error and lists multiple grounds therefor, the result is that the point contains multiple legal issues. Separate issues should be stated in separate points relied on." 999 S.W.2d at 283 n.2.

11

the claims raised on appeal). Before reviewing the merits of Pedroli's appeal however, we first look at the issue of standing.

"Standing is a prerequisite to this Court's authority to address the substantive issues; it must be addressed before all other issues and must be shown to be present prior to any adjudication on the merits." *Bray v. Lee*, 620 S.W.3d 278, 281 (Mo. App. E.D. 2021). "Regardless of the procedural context, our review of the court's determination regarding standing is de novo, and the party seeking relief bears the burden to establish standing." *Klenc v. John Beal, Inc.*, 484 S.W.3d 351, 354 (Mo. App. E.D. 2015). "We determine standing as a matter of law on the basis of the petition and the undisputed facts." *Id. See also Borges v. Mo. Pub. Entity Risk Mgmt. Fund*, 358 S.W.3d 177, 180 (Mo. App. W.D. 2012) ("We consider the petition along with any other non-contested facts to determine whether the petition should be dismissed due to Petitioners' lack of standing.").

In *Klenc*, similar to this case, a defendant filed a motion to dismiss the petition based on plaintiff's lack of standing. 484 S.W.3d at 354. The court granted the plaintiff leave to file an amended petition. *Id.* The defendants then filed a motion for summary judgment, arguing again that the plaintiff lacked standing. *Id.* The trial court agreed, entering summary judgment for defendants. *Id.* On appeal, the Court ultimately held that it was not appropriate to grant summary judgment, but that a dismissal should have been entered. *Id.* at 354, 356. Of more import to the case before us, the Court also held that regardless of the procedural context, our review of the court's determination regarding standing is de novo, and the party seeking relief bears the burden to establish standing. *Id*. at 354.

With these principles in mind, we turn now to Pedroli's arguments on appeal, and, as we must, first address Pedroli's standing to bring each of his claims.

12

## Declaratory Judgment Claim

Pedroli contends that the trial court erred in granting summary judgment against him on his claim requesting a declaratory judgment that House Rule 127 violated the Missouri Constitution and Article III, §§ 19(b) and 19(c) that expressly provide that the House of Representatives is subject to the provisions of the Sunshine Law. As discussed above, State Defendants raised the standing issue—in addition to arguing the merits—in a motion to dismiss as well as in their suggestions in support of their motion for summary judgment, contending both that Pedroli did not have standing to challenge the constitutionality of House Rule 127 or to bring a claim alleging this Sunshine Law violation.[12] We agree.

"A party must have standing to bring an action in a Missouri court. Standing, at its most basic level, simply means that the party or parties seeking relief must have some stake in the litigation." *LeBeau v. Comm'rs of Franklin Cnty.*, 422 S.W.3d 284, 288 (Mo. banc 2014). In a declaratory judgment action, "the plaintiff must have a legally protectable interest at stake in the outcome of the litigation." *Id.*; *Lehmann v. Bd. of Educ. Of Fayette R3 Sch. Dist.*, 649 S.W.3d 303, 309 (Mo. App. W.D. 2022). "A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." *LeBeau*, 422 S.W.3d at 288 (quoting *Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. banc 2011)).

To be adversely affected, Pedroli must show that he has "some legally protectable interest in the litigation so as to be directly and adversely affected by its outcome." *Brehm v. Bacon Twp.*, 426 S.W.3d 1, 5 (Mo. banc 2014) (quoting *Schweich v. Nixon*, 408 S.W.3d 769, 775 (Mo.

---

[12] State Defendants raised the standing issue before the trial court as well as in its brief to this Court. Pedroli, however, did not address the various standing issues in his brief and did not file a reply brief.

banc 2013)). "Proof of a legally protectable interest requires a showing of 'a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief.'" *Id*. (quoting *Schweich*, 408 S.W.3d at 775). "A party has standing to challenge the constitutionality of a statute (or rule or directive as the case may be) only insofar as it has an adverse impact on his own rights." *Williston v. Vasterling*, 536 S.W.3d 321, 340 (Mo. App. W.D. 2017) (quoting *EBG Health Care III, Inc. v. Mo. Health Facilities Rev. Comm.*, 12 S.W.3d 354, 362 (Mo. App. W.D. 2000)).

"Standing is a threshold requirement. Without it, a court has no power to grant the relief requested." *Querry v. State Highway and Transp. Comm'n*, 60 S.W.3d 630, 634 (Mo. App. W.D. 2001) (quoting *In re Estate of Scott*, 913 S.W.2d 104, 105 (Mo. App. E.D. 1995)).[13] "A party who lacks standing may not seek a declaratory judgment action." *Id.* at 637 (quoting *State ex rel. Nixon v. Am. Tobacco Co., Inc.*, 34 S.W.3d 122, 132 (Mo. banc 2000)).

Here, Pedroli filed a declaratory judgment action challenging the constitutionality of House Rule 127, but just like a challenge to a statute or agency rule, Pedroli must show that House Rule 127 adversely impacted his own rights and that he has some legally protectable interest in the litigation so as to be directly and adversely affected by its outcome. Pedroli did not do so.

---

[13] We note that in *Querry v. State Highway and Transportation Commission*, 60 S.W.3d 630, 637 (Mo. App. W.D. 2001), the Court stated that because the appellants lacked standing to bring the case, the trial court "did not have subject matter jurisdiction over the action." This Court, therefore, reversed and remanded the trial court's grant of summary judgment with directions for the trial court to dismiss for "lack of subject matter jurisdiction." *Id*. As our Supreme Court has set forth, this is an issue of the trial court's "authority" rather than its "jurisdiction" but we still find *Querry* instructive. *See J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 255 (Mo. banc 2009).

Pedroli's summary judgment response admitted the truth of paragraphs 24, 25, and 26 of State Defendant's statement of uncontroverted material facts establishing that the "client" with an alleged interest in the records was not identified or a named plaintiff in the lawsuit, and that the second amended petition did not allege that any of the individual's names from the emails produced match the name of the alleged "client" referenced in Pedroli's petition. With respect to who or what entity sent the Sunshine Law request, paragraph first of State Defendants' statement of uncontroverted material facts read as follows: "Plaintiff Mark Pedroli emailed an open records request on behalf of his 'client' and his law firm to various '@house.mo.gov' email addresses in April 2019." Pedroli responded:

> ADMIT to the extent that Mr. Pedroli emailed an open records request to various "@house.mo.gov" email addresses but DENY to the extent that this request was sent exclusively on behalf of a "client" and "his law firm." See Petition, ¶ 11 ("Plaintiff served a Sunshine request" with no reference to either a client or his law firm); Defs' Exhibit B (stating "Therefore, I submit the following Sunshine request . . ." and bearing Mr. Pedroli's signature).

After reviewing Exhibit B, the March 2, 2019, request, it is plainly clear that Pedroli Law, LLC and the Project made the records request. The first line of the letter reads, "I am requesting records, *on behalf of Pedroli Law, LLC and the Sunshine and Government Accountability Project*, pursuant to the Missouri Sunshine Law, RSMo Chapter 610" and the letter was signed by "Mark Pedroli, Esq." (emphasis added). Pedroli relies on the sentence in the records request immediately before the list of the specific emails that were sought that reads: "Therefore, I submit the following Sunshine request." Pedroli ignores the opening portion of the records request which we find to be dispositive of the entity that made the Sunshine Law records request—Pedroli Law, LLC.

Pedroli does not have standing to challenge House Rule 127 in a declaratory judgment action as Pedroli individually was not adversely affected by it. Here, Pedroli was not the entity

15

who made the records request, but instead, Pedroli Law, LLC did so. Pedroli Law, LLC was not the plaintiff in the underlying action. Pedroli was simply not aggrieved by the operation of House Rule 127 and its use to justify the redaction of the email and postal addresses in State Defendant's response to Pedroli Law, LLC's records request. Pedroli failed to show he has a "legally protectable interest at stake in the outcome of the litigation" so as to be directly and adversely affected by its outcome. *See LeBeau*, 422 S.W.3d at 288. Therefore, we do not reach the merits of Pedroli's arguments on the constitutionality of House Rule 127.

Because Pedroli did not show he had a legally protectible interest at stake in the outcome of the litigation, he did not establish standing to bring his declaratory judgment action.

### Sunshine Law Violation

Next, we turn to Pedroli's contention that State Defendants violated both the Sunshine Law and Article III § 19(b) of the Missouri Constitution by providing redacted documents to the records requests. We do not reach the merits of Pedroli's arguments because we conclude that under the facts in this case, Pedroli did not establish that he had standing to bring this Sunshine Law violation claim.

In their suggestions in support of the motion for summary judgment, State Defendants contended that Pedroli did not have standing to bring this Sunshine Law violation. The trial court did not address this argument in its grant of summary judgment to State Defendants, but proceeded to the merits of the case. As discussed above, the court must necessarily determine standing before reaching the merits. On appeal, we must do so as well.

As the party seeking relief, Pedroli had the burden to establish that he had standing to maintain his lawsuit. *See Borges*, 358 S.W.3d at 181. Section 610.027.1 provides, in relevant part, that "[a]ny aggrieved person, taxpayer to, or citizen of, this state, or the attorney general or

16

prosecuting attorney, may seek judicial enforcement of the requirements of sections 610.010 to 610.026." Pedroli's second amended petition alleged "that the failure of defendants to produce the records has directly and adversely affected [p]laintiff and his client." Pedroli specifically relies on his status as an aggrieved party in bringing suit, not his status as a taxpayer or citizen of this State. Here, as we have already said, Sunshine requests were not made by Pedroli individually but by Pedroli Law, LLC who stated its "client's" name, address, and identity was misappropriated. Neither Pedroli Law, LLC, nor Pedroli's "client" were plaintiffs in the underlying action.

Pedroli, therefore, under the circumstances of this case, is not an aggrieved person who can seek judicial enforcement of the Sunshine Law. Pedroli cannot and did not show that he was aggrieved by the actions of State Defendants in their responses to Pedroli Law, LLC's Sunshine Law requests.

As the dissent acknowledges, no Missouri decision addresses whether an attorney has standing under the Sunshine Law simply because he or she made the request on behalf of other parties. The dissent then cites and relies on caselaw applying the federal Freedom of Information Act (FOIA), which hold that an attorney who makes a FOIA request, on behalf of either a named or unnamed client, has standing to sue in the attorney's own name to allege a FOIA violation.

However, 5 U.S.C. § 552, the FOIA, continually refers to the "requester" and "the person making such request." As *Mahtesian v. U.S. Office of Personnel Management* states: "FOIA provides that "'any person' can seek records—without the need to show any particularized interest in those records . . . ." 388 F. Supp. 2d 1047, 1050 (N.D. Cal. 2005). This case and other federal cases cited by the dissent make clear that *under FOIA*, the attorney is the

17

"requester" under the specific provisions of the federal statute, and in fact may be the only person who can bring suit, to the exclusion of a client, if the client is not named in the request.

Missouri's Sunshine Law has very different language, specifying that only an aggrieved person, taxpayer to, or citizen of, this State may file suit alleging a violation of the Sunshine Law. As *Harper v. Missouri State Highway Patrol*, 592 S.W.3d 32 (Mo. App. W.D. 2019) makes clear, there is a distinction between the FOIA and the Missouri Sunshine Law. In *Harper*, the circuit court found that the records at issue were subject to FOIA and that FOIA preempted the Sunshine Law because, "Under the Supremacy Clause, state laws and constitutional provisions are 'preempted and have no effect' to the extent they conflict with federal laws." 592 S.W.3d at 38. On appeal, we reversed, discussing the FOIA, at section 552(a)(3) which states, "[E]ach agency, upon request for records . . . shall make the records promptly available to any person." *Id.* We stated that because FOIA's enforcement provision, section 552(a)(4)(B), referred only to "agency records," it was "clear that the disclosure obligations imposed by section 552(a)(3) were intended to apply only to federal agencies" and that "Congress did not set forth a clear and manifest purpose to supersede state laws traditionally governing the public records of state agencies." *Id.* at 38–39. Our Court concluded by reversing the circuit court's judgment applying the FOIA to records that were subject to the Missouri Sunshine Law. *Id.* at 40-41.

So, while we agree with the dissent that if Pedroli had made this request under the FOIA, he would be the requester, and could therefore sue under the FOIA, we disagree that the premise is equally applicable here.

We now turn to the other classifications of standing under section 610.027.1: "taxpayer to, or citizen of, this state."[14] Pedroli did not allege or rely on "taxpayer to, or citizen of, this state" as a basis to confer standing to bring this Sunshine Law action. Instead, Pedroli alleged in his petition only that he "was a concerned Missouri *resident*." Cases from our Court have concluded that citizen and resident are not necessarily the same, particularly when the statute at issue specifies which is to be pled and proved for purposes of standing to bring a claim.

In *Sweeney v. Ashcroft*, a plaintiff challenged an initiative petition under Section 116.200.1, which provides that "*any citizen* may apply to the circuit court of Cole County to compel [the secretary of state] to reverse" a decision to certify an initiative as sufficient or insufficient. 652 S.W.3d 711, 724 (Mo. App. W.D. 2022) (emphasis added). The Rule 73.01(b) motions "granted by the circuit court argued that Sweeney failed to put on evidence that she was a 'Missouri resident,' and thus failed to prove that she had standing under section 116.200.1." *Id.* at 724. On appeal, the Secretary of State continued to argue that "Missouri resident" was the proper legal standard for determining standing under section 116.200.1, even though section 116.200.1 used the phrase "any citizen." *Id.* We "reject[ed] the essential premise of the Rule 73.01(b) [m]otions, which equate[d] the term 'citizen' as used in section 116.200.1 with 'Missouri resident.'" *Id.* at 725. We stated: "Construing the term 'citizen' in section 116.200.1 to mean *only* 'Missouri resident,' or to even require that one be a 'Missouri resident,' is not consistent with the multiple, common definitions of 'citizen[.]'" *Id.* at 725-26. After a discussion of the definitions of "citizen," we held:

> These definitions of "citizen" are much broader than, and cannot be reconciled with, defining the term "citizen" as used in section 116.200.1 to mean "Missouri resident." Even if "citizen" as used in section 116.200.1 were to be interpreted to mean "*Missouri* citizens," (an issue we need not resolve), it cannot be said that

---

[14] Section 610.027.1 also provides that the attorney general or prosecuting attorney may file suit.

> "Missouri citizen" means "Missouri resident." *See, e.g.*, *Loftus v. Lee*, 308
> S.W.2d 654, 657 (Mo. 1958) (citing *Douglas v. New York, New Haven R. Co.*,
> 279 U.S. 377, 387 (1929) which held that "[a] distinction of privileges according
> to residence may be based upon rational considerations and has been upheld by
> this Court, *emphasizing the difference between citizenship and residence . . . .* ")
> (emphasis added). *See also*, 14 C.J.S. Citizens section 13 (August 2022 Update)
> (observing that "[t]here is some confusion in legal nomenclature with respect to
> the terms 'citizen,' 'inhabitant,' and 'resident.' 'Citizen' is not necessarily
> synonymous, or a term convertible with 'inhabitant' or 'resident,' and, in some
> instances, the distinction is important").

*Id.* at 726.

Additionally, in *Eames v. Eames*, our Court addressed the dissolution statute which required "residence" to be pled and proved. 463 S.W.2d 576 (Mo. App. 1971). While *Eames* is the flip side of the one before us, it is clearly instructive of the distinction between residence and citizenship when the statute at issue requires one or the other. In *Eames*, the plaintiff's petition alleged that she had been a citizen of Kansas City, Missouri, for one year before the filing of the petition but it did not allege that she had been a resident as the statute required. *Id.* at 578. We stated:

> Although the word "citizen" may under some definitions of it, connote
> "residence" it does not necessarily do so and we see no reason to approve this
> nonconformity with the legislative requirement—especially since our courts have
> consistently and for so many years required simple but strict compliance. We
> believe that plaintiff's petition did not contain the necessary statutory allegation
> of residence which is required to confer jurisdiction on the court.

*Id*.

This distinction is significant when looking at standing in the case before us. Nowhere in Pedroli's second amended petition, statement of uncontroverted facts connected with his motion for partial summary judgment, or in his response to State Defendant's motion for summary judgment does he plead, much less prove, that he was a "taxpayer to" or "a citizen of" this state as required by section 610.027.1. The second amended petition alleged that "plaintiff Mark

20

Pedroli is a resident of St. Louis County, Missouri." Paragraph one of Pedroli's statement of uncontroverted material facts states: "Plaintiff Mark Pedroli is a resident of the State of Missouri" with a supporting declaration from Pedroli.[15] As the cases discussed above indicate, this is not sufficient to confer standing on Pedroli to file this suit under the Sunshine Law.[16]

The dissent notes that we find neither Pedroli's petition, nor summary judgment briefing, pleads or proves that he was a Missouri "citizen." The dissent states that Pedroli's status as a Missouri citizen "is a question of law, not a question of fact, which plaintiff was not required to plead or prove . . . " and cites *Baker v. Crossroads Academy-Central Street*, 648 S.W.3d 790 (Mo. App W.D. 2022). While *Baker* does state that "standing is a question of law, which is reviewed de novo" it also says that standing "is determined as a matter of law *on the basis of the petition* along with other non-contested facts accepted as true by the parties . . . " in reference to a motion to dismiss. *Id* at 798 (citation omitted) (emphasis added). The *Baker* case held that the plaintiff did not plead sufficient factual allegations showing an alleged injury, thereby finding dismissal appropriate. *Id.* at 801. Pedroli indeed needed to plead sufficient facts in his petition or in response to the House's motion for summary judgment from which we can find standing, and he failed to do so. The dissent infers both citizen and taxpayer status from Pedroli's allegation that he is a Missouri "resident." As discussed above, we find that insufficient under section 610.027.

---

[15] The declaration stated, "I am a resident of Missouri."

[16] We note that Pedroli's conclusion to his amended brief filed with this Court states: "Accordingly, Appellant Sunshine and Government Accountability Project respectfully prays that this [Court] reverse the trial court's grant of summary judgment against Appellant . . . . ," thereby requesting relief for an entity that is not even a party to this appeal, which we obviously cannot grant.

21

"[A] claim that a party lacks standing has generally been treated as a motion to dismiss[.]" *Borges*, 358 S.W.3d at 183 (citing *State ex rel. Christian Health Care of Springfield, Inc. v. Mo. Dep't of Health and Senior Serv.*, 229 S.W.3d 270, 276 (Mo. App. W.D. 2007)). Because summary judgment is inherently a merits-based disposition of a case, a motion for summary judgment claiming that a party lacks standing has therefore, generally been treated as a motion to dismiss. *Bray*, 620 S.W.3d at 283. "[E]ven if the standing argument is raised in a motion for summary judgment or other motion in which matters outside the pleadings are considered, the court must still enter dismissal as opposed to summary judgment." *Borges*, 358 S.W.3d at 183; *Klenc*, 484 S.W.3d at 354.

"[I]t is not appropriate to enter summary judgment—an inherently merits-based disposition—when the party seeking relief lacks standing." *Klenc*, 484 S.W.3d at 354. "As a result, even if the standing argument is raised in a motion for summary judgment or other motion in which matters outside the pleadings are considered, the court must still enter *dismissal* as opposed to summary judgment." *Borges*, 358 S.W.3d at 183 (emphasis added).

As we have said, State Defendants raised the standing issue—in addition to arguing the merits—in a motion to dismiss as well as in their suggestions in support of their motion for summary judgment, contending both that Pedroli did not have standing to challenge the constitutionality of House Rule 127 or to bring a claim alleging this Sunshine Law violation. Pedroli failed to establish that he had standing to bring either claim, and therefore, the trial court lacked the authority to decide the case on the merits.

Pedroli's sole point on appeal is denied.

## Conclusion

Based on the foregoing, we conclude that Pedroli did not meet his burden to establish that he had standing to pursue his declaratory judgment action against State Defendants or bring this

Sunshine Law violation claim.  Because of this, we in turn lack the authority to address the substantive issues presented, or to grant the appellate relief Pedroli requests.  Instead, we must treat the State Defendant's motion for summary judgment as a motion to dismiss and provide the only available remedy as set forth in *Borges* and *Klenc*.

Accordingly, the case is reversed and remanded with directions for the trial court to dismiss Pedroli's second amended petition without prejudice.

_____
Janet Sutton, Presiding Judge

Mark D. Pfeiffer, Judge, concurs.
Alok Ahuja, Judge, dissents in a separate opinion.


| | | |
|---|---|---|
| SUNSHINE AND GOVERNMENT ACCOUNTABILITY PROJECT, | ) ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD86212 |
| | ) | |
| MISSOURI HOUSE OF REPRESENTATIVES, | ) ) | Filed: March 5, 2024 |
| | ) | |
| Respondent. | ) | |

## DISSENTING OPINION

I respectfully dissent. Unlike the majority, I agree with the circuit court that Mark Pedroli had standing to prosecute this case in his own name. Pedroli was "aggrieved" by the House's withholding of responsive information, because he made the records requests which are at issue; Pedroli also pleaded and proved facts necessary to show that he is a Missouri "citizen." On the merits, I would hold that House Rule 127 is unconstitutional because it attempts to exempt legislative records from the generally applicable provisions of the Sunshine Law, in violation of Article III, § 19(b) of the Missouri Constitution. I would accordingly reverse the circuit court's judgment on the merits.

1

## Factual Background

On April 2, 2019, Pedroli sent an e-mail to multiple members of the Missouri House of Representatives, to which he attached a letter requesting records under the Sunshine Law. Pedroli's letter, written on the letterhead of Pedroli Law LLC, stated:

Dear Missouri Elected Official,

I am requesting records, on behalf of Pedroli Law, LLC and the Sunshine and Government Accountability Project, pursuant to the Missouri Sunshine Law, RSMo Chapter 610. I am investigating the misappropriation of constituent identities for the purpose of improperly influencing elected officials. My client's name, address, and identity was misappropriated and used to generate communications to elected officials in an attempt to improperly influence legislation related to joinder, venue, and more broadly "tort reform." Based on recent reports by the *St. Louis Post-Dispatch* this misappropriation appears to be widespread. Our investigation, in part, intends to prevent such misleading emails to Missouri elected officials in the future, no matter what the issue, and we need your help. Therefore, I submit the following Sunshine request:

Records requested:

1.      [A]ll emails received by you in the last two years from a constituent and/or someone purporting to be a constituent wherein the subject line of the email states: a) "Keep Out-of-State Lawsuits Out of Missouri Courts" and/or b) "unclog Missouri courts[,]" **and** all emails wherein the body of the email contains the following words or phrases: c) "joinder" d) "venue" e) "$4.7 billion[.]"

2.      Your responses to the above emails, all email replies to your response, and the remainder of the email exchange.

Pedroli asked the letter's recipients to reply to him by phone, or at his e-mail address at the law firm.

Various legislators and House officers responded to Pedroli's request in April and May 2019. The responses provided copies of e-mails received by House members which fell within the terms of Pedroli's request. Although a number of House members provided Pedroli with unredacted e-mails, others redacted the e-mail and postal addresses of the constituents at issue; one Representative also redacted constituents' phone numbers.

The House members who withheld constituent addresses and phone numbers relied on House Rule 127, which was adopted by the 100th General Assembly on January 15, 2019. House Rule 127 provided:

> Members may keep constituent case files, and records of the caucus of the majority or minority party of the house that contain caucus strategy, confidential. Constituent case files include any correspondence, written or electronic, between a member and a constituent, or between a member and any other party pertaining to a constituent's grievance, a question of eligibility for any benefit as it relates to a particular constituent, or any issue regarding a constituent's request for assistance.

(The 2019 version of House Rule 127 is identical to current House Rule 126(a), which was adopted by the 102nd General Assembly on January 11, 2023.) To justify the redactions, the House members also contended that, because House Rule 127 authorized them to keep constituent records confidential, the redacted information was exempt from the Sunshine Law as "[r]ecords that are protected from disclosure by law" within the meaning of § 610.021(14).[1]

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2023 Cumulative Supplement.
Certain House members also argued that the redacted information was subject to "the constitutional expectation of privacy to personal information," and was subject to § 610.021(22)'s protection of certain "personal identification numbers." On appeal, the House does not rely on those arguments to justify the redactions.

3

Although the Sunshine and Government Accountability Project was named as the plaintiff in the original petition, the circuit court later granted leave to file a first amended petition in which Pedroli was substituted as the plaintiff. The amended petition specifically alleged that Pedroli was a resident of St. Louis County. The petition and its attachments also reflected that Pedroli is a Missouri-licensed attorney practicing from offices located in Clayton. Like the original petition, Pedroli's first amended petition asserted two claims for relief: Count I prayed for a declaratory judgment that House Rule 127 was unconstitutional, while Count II alleged that the House had knowingly violated the Sunshine Law by redacting constituent addresses and phone numbers from the records responsive to Pedroli's requests.

The defendants (collectively, "the House") moved to dismiss the first amended petition. The circuit court granted the motion to dismiss as to the declaratory judgment count, but denied the motion with respect to Pedroli's Sunshine Law claim. Although the court concluded that "Mark Pedroli in his individual capacity is not aggrieved by the alleged failure of the Defendants to comply with the 'Sunshine Law' requests made on behalf of his clients," it found that he nevertheless had standing under § 610.027.1. The court noted that "§ 610.027.1 does not limit itself to 'aggrieved persons,' granting standing to a 'citizen of [ ] this state' to seek 'judicial enforcement' of the requirements of the 'Sunshine Law.'" The court concluded that "[a] resident of St. Louis County, Missouri would qualify as a citizen of this state," and Pedroli accordingly had standing to prosecute his Sunshine Law claim.

4

The House moved for summary judgment in June 2021. In its motion, the House again argued that Pedroli lacked standing to prosecute the action, and that he was not the real party in interest. The House's motion also argued that House Rule 127 justified the withholding of the information Pedroli requested. Pedroli filed a cross-motion for partial summary judgment, seeking a finding that the House's withholding of information violated the Sunshine Law, and that House Rule 127 was unconstitutional.

On January 18, 2023, the circuit court entered its judgment, granting the House's motion for summary judgment, and denying Pedroli's cross-motion.[2] Consistent with its denial of the House's motion to dismiss Pedroli's Sunshine Law claim, the circuit court did not address the House's renewed contention that Pedroli lacked standing, but instead addressed the merits of his Sunshine Law claim. The court held that House Rule 127 was consistent with Article III, § 19(b). The court concluded that Article III, § 19(b) merely declares that legislative records are "public records" within the meaning of § 610.010(6), but does not require that those records actually be _open_ for public inspection. According to the circuit court, "[n]othing in Article III, Section 19(b) prevents the General Assembly from closing those records, either directly or indirectly by House rule." The circuit court also reasoned that Article III, § 19(b) does not limit the House's general authority to "determine the rules of its own proceedings" under Article III, § 18. Having

---

[2] The circuit court's judgment incorrectly identifies the Sunshine and Government Accountability Project as the plaintiff in the case, even though Pedroli had been substituted as the sole named plaintiff in both the first and second amended petitions. That misnomer has continued in this Court, despite the fact that Pedroli is the only plaintiff in this action, and the only person who filed a notice of appeal.

5

determined that House Rule 127 was constitutional, the circuit court held that the House had lawfully refused to disclose certain constituent information in reliance on the Rule.

Pedroli appeals.

## Discussion

### I.

The majority opinion begins its analysis by concluding that Pedroli's Point Relied On fails to comply with Rule 84.04(d)(1).

### A.

I fail to see the defects which the majority identifies in Pedroli's Point Relied On. His Point Relied On identifies specifically: the ruling he challenges (the circuit court's grant of summary judgment to the House on both counts of his petition); the legal reason for his claim of error (that House Rule 127 violates Article III, § 19(a) of the Missouri Constitution); and why the legal reason supports reversible error (that Article III, § 19(a) makes the House subject to the provisions of the Sunshine Law). I am at a loss to understand what information required by Rule 84.04(d)(1) is missing from Pedroli's Point.

The majority faults Pedroli for "includ[ing] several subpoints" under his Point Relied On. But the "subpoints" to which the majority refers are merely *sub-headings* in the Argument section of Pedroli's brief. Nothing in Rule 84.04(d)(1) prohibits an appellant from including sub-headings in the Argument section of its brief; on the contrary, such sub-headings can be a useful guide to a reader, particularly if the argument is several pages long.

6

And although the majority accuses Pedroli of including "completely separate arguments" in the "subpoints" in his Brief, the sub-headings in fact merely identify separate *components* of his over-arching legal claim:  (1) that the House's rulemaking authority under Article III, § 18 of the Missouri Constitution does not conflict with § 19(b)'s mandate that legislative records are subject to the Sunshine Law; (2) that the constitutionality of House Rule 127 is a justiciable issue which this Court is authorized to decide; and (3) that the House's failure to produce unredacted records in response to Pedroli's request, in reliance on House Rule 127, violates the Sunshine Law given the Rule's unconstitutionality.  All of the legal contentions Pedroli makes under his Point Relied On support the claim of error identified in the Point itself. Presumably, if Pedroli had made the identical arguments, *without including sub-headings* to guide the reader through his multi-page Argument, the majority would not fault him for including improper "subpoints" in his brief. The sub-headings in Pedroli's brief do not violate Rule 84.01(d)(1).

The majority also faults Pedroli for identifying the circuit court's grant of summary judgment to the House as "the trial court ruling or action that the appellant challenges."  Rule 84.04(d)(1)(A).  But Pedroli's Point accurately identifies the ruling he challenges:  he is aggrieved by the circuit court's entry of summary judgment for the House (based on its conclusion that House Rule 127 lawfully shielded the requested records from disclosure).  What _other_ ruling could he conceivably challenge instead?  While the majority suggests that Pedroli's Point could have included the explicit assertion "that the trial court erred in finding House Rule 127 constitutional as to Count I," that claim

is evident from Pedroli's Point: his Point asserts that "[t]he trial court erred in granting summary judgment . . . because House Rule 127 violates the Missouri Constitution." The Missouri Supreme Court has admonished that "[t]he requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. 1978). The majority's insistence that Pedroli re-state what was already obvious from his Point – using a slightly different verbal formulation – is hard to square with this directive.

The majority cites two cases to support its conclusion that reference to the circuit court's grant of summary judgment was an improper identification of the challenged ruling. In one, the appellant "list[ed] multiple grounds" for attacking a judgment in a single point; the problem was <u>not</u> that the Point identified "the judgment" as the challenged ruling, but that "the point contains multiple legal issues." *Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279, 283 n.2 (Mo. App. E.D. 1999). As I have explained, Pedroli's Point does not rely on "multiple grounds" to attack the circuit court's summary judgment ruling, but only one: that the Rule on which the House relied to justify its withholding of requested documents is unconstitutional.

In the second case cited by the majority, the Court held that the appellant's points had adequately identified the challenged ruling, by stating "that the court erred in granting the *ex parte* order of protection and in granting the 'order of protection.'" *R.M. v. King*, 671 S.W.3d 394, 398 (Mo. App. W.D. 2023). If it is sufficient to identify *the granting of an order of*

8

*protection* as the ruling challenged on appeal, why is it insufficient to identify *the granting of summary judgment*? The majority's conclusion that Pedroli has insufficiently identified the ruling he challenges also cannot be squared with *Calzone v. Maries County Commission*, 648 S.W.3d 140 (Mo. App. S.D. 2022), which recently held that a point sufficiently identified the challenged ruling where it contended that "[t]he trial court erred in *granting judgment to the Commission regarding Count II*." *Id.* at 144–45 (emphasis added).

The majority's hyper-technical parsing of Pedroli's Point is inconsistent with the Missouri Supreme Court's oft-repeated statements that appellate courts should decide appeals on their merits wherever possible, rather than based on what can only be described as "procedural technicalities." *See, e.g.*, *Hink v. Helfrich*, 545 S.W.3d 335, 338 (Mo. 2018) ("'An appellate court prefers to dispose of a case on the merits rather than to dismiss an appeal for deficiencies in the brief.'" (citation omitted)); *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. 1997) ("[T]his Court's policy is to decide a case on its merits rather than on technical deficiencies in the brief."). With this overriding principle in mind, the Supreme Court has admonished that "[s]tatutes and rules should be construed liberally in favor of allowing appeals to proceed." *Sherrill v. Wilson*, 653 S.W.2d 661, 663 (Mo. 1983). With all respect to my colleagues, their interpretation of the "points relied on" requirement of Rule 84.04(d)(1)(A) is anything <u>but</u> "liberal."

**B.**

Unfortunately, the majority's criticism of Pedroli's Point Relied On is not an aberration, but is typical of Missouri courts' frequently pedantic

reading of appellants' points. This presents a larger question: whether the Missouri Supreme Court should abandon the points-relied-on requirement once and for all.

Missouri is apparently unique in the Nation in requiring such technically-worded issue statements in appellate briefs. No other State has a similar requirement – nor do the federal courts. *See* Tyler R. Wood, *An Analysis of Missouri's Rule 84.04(D): Points Relied On*, 67 MO. BAR J. 154, 156 (2011) ("If imitation is the sincerest form of flattery, Missouri's points relied on must leave a lot to be desired.").

Missouri courts repeatedly claim that compliance with the points-relied-on requirement is a simple matter:

> To guarantee advocates are able to comply with these standards, Rule 84.04(d)(1) sets forth not only clear dictates on how to comply with its requirements, but it also sets forth *an easy to understand, fill-in-the-blank template* for drafting a proper point relied on.

*State v. Minor*, 648 S.W.3d 721, 728 (Mo. 2022) (emphasis added). Given the purportedly "'simple template'" contained in Rule 84.04(d)(1), another decision declares that "appellants simply have no excuse for failing to submit adequate points relied on." *LT Group USA, LLC v. Clark*, 667 S.W.3d 631, 634 (Mo. App. E.D. 2023) (citations and footnote omitted).

Although <u>courts</u> may consider the drafting of adequate points relied on to be "simple" and "easy," <u>litigants</u> continue to struggle. The requirement that an appellant's brief contain points stating "wherein and why" a trial court's ruling is erroneous has existed for more than sixty years. *See* Paula R. Hicks, *Five Decades of Explanation and Evolution, Yet the Rule Appears*

10

*Unchanged: Missouri's Points Relied On Rule*, 60 MO. L. REV. 931, 935 & n.34 (1995). Yet in the second half of 2023 alone, *thirty-five* published opinions determined that one or more of an appellant's points relied on was defective. (A listing of these cases is included in an Appendix to this opinion.) My census, covering only a six-month period, is undoubtedly a substantial undercount, since it excludes cases decided by unpublished orders. Because those unpublished dispositions are all unanimous affirmances, *see* Rules 30.25(b) and 84.16(b), in each of those cases the appellant obtained no relief; I presume that purportedly defective points relied on played a role in many such decisions. The frequency of purportedly defective points has apparently been constant – if not increasing – over the last fifty years. *See* Hicks, 60 MO. L. REV. at 938 (reporting the number of appellate opinions finding deficiencies in points relied on between 1972 and 1975; citing Judge Harry L.C. Weier and William A. Fairbank, *Why Write a Defective Brief?: Give Your Client a Chance on Appeal*, 33 MO. BAR J. 79, 81 (1977)).

The *grounds* on which courts find points relied on to be defective seem, in many cases, to be unduly exacting and/or picayune. For example, although courts frequently complain that points relied on are too long,[3] multiple cases now require *not only* that the point explain why a trial court's ruling is erroneous, but *also* how the appellant was *prejudiced* by the error. *Seymour v. Switzer Tenant LLC*, 667 S.W.3d 619, 629-30 (Mo. App. W.D. 2023);

---

[3] *See, e.g., Siddens v. Philadelphia Indem. Ins. Co.*, 631 S.W.3d 675, 679 n.4 (Mo. App. W.D. 2021) (complaining that double-spaced point relied on was "nearly a page long"); *Maskill v. Cummins*, 397 S.W.3d 27, 31 (Mo. App. W.D. 2013) (complaining that each of the appellants "points relied on are over two pages long").

*Harned v. Spurlock*, 658 S.W.3d 562, 575 (Mo. App. W.D. 2022) (citing *Reed v. Kansas City Mo. Sch. Dist.*, 504 S.W.3d 235, 244 (Mo. App. W.D. 2016)). Thus, although courts expect points relied on to be concise, they also expect the points to contain what is essentially a self-contained, comprehensive summary of the entire argument.

In other cases, courts have held that a point relied on failed to adequately identify the challenged ruling, even when – as here – the nature of the claimed error was not seriously in question. Thus, the Supreme Court recently held that a point was defective where it stated that "[t]he Court of Appeals correctly reversed" a decision of the Labor and Industrial Relations Commission because "the Commission erroneously applied the wrong legal standard" in specific ways. According to the Supreme Court, the Point was "improper" because it focused on the Court of Appeals' decision, which had been vacated by the Supreme Court's grant of transfer – even though the point *also* explained why the appellant contended that the Commission had ruled erroneously. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 506-07 (Mo. 2022). In other cases, courts have faulted appellants in criminal cases whose points challenged the denial of pre-trial motions to suppress evidence, but failed to explicitly state that the appellants were challenging the admission of that evidence *at trial*. *State v. Lloyd*, 205 S.W.3d 893, 900 (Mo. App. S.D. 2006) (citing *State v. Wolf*, 91 S.W.3d 636, 642 (Mo. App. S.D. 2002)).

Other cases fault an appellant's points for faulty grammar or punctuation. One case asserted that, by using a subjunctive verb tense in a point, an appellant had "set[ ] forth a claim of error that is speculative at

best." *City of Kansas City v. Troyer*, 670 S.W.3d 77, 83 (Mo. App. W.D. 2023). In another case, the Court criticized a point relied on for "present[ing] a collection of several sentences in lieu of one complete statement"; the Court complained that "requir[ing] this Court to piece together [the appellant's] various sentences to reformulate his argument, [would] place[ ] this Court in the position of advocate." *State v. Haneline*, 680 S.W.3d 550, 562 (Mo. App. S.D. 2023). The point in *Haneline* consisted of four short sentences, none longer than twenty-eight words; the entire point was only seventy-nine words long. It hardly seems an undue burden to require the Court to "piece together" this four-sentence paragraph to determine the nature of the appellant's claim.

Besides being hyper-technical, courts' enforcement of Rule 84.04(d)(1) has also been inconsistent. Courts in many, many cases have exercised their discretion to overlook deficiencies in points relied on where the argument portion of an appellant's brief clarifies the issue. *See, e.g., Allen v. 32nd Judicial Circuit*, 638 S.W.3d 880, 887 (Mo. 2022) (considering a claim *wholly omitted* from the appellant's point, where the argument section of the brief developed the issue); *State v. Sloan*, 756 S.W.2d 503, 505 n.2 (Mo. 1988) ("While it is apparent that the point does not state 'wherein and why' the trial court erred, appellant's arguments make clear the grounds for alleged error."); *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) ("although not required, an appellate court may, in its discretion, look to other portions of an appellant's brief in attempting to ascertain the issue being raised in a deficient point relied on"); *Taormina v. Taormina*, 639

13

S.W.3d 482, 489 (Mo. App. W.D. 2021); *Ebert v. Ebert*, 627 S.W.3d 571, 590 (Mo. App. E.D. 2021); *Revis v. Bassman*, 604 S.W.3d 644, 651 (Mo. App. E.D. 2020).

On the other hand, a number of cases categorically refuse to look to the argument section of the appellant's brief to glean the nature of the appellant's argument. Most prominently, in *Lexow v. Boeing Co.*, 643 S.W.3d 501 (Mo. 2022), the Missouri Supreme Court dismissed an appeal without addressing the merits based on deficiencies in the appellant's points relied on – reportedly the first time the Court had taken that drastic step in decades. *See* Scott Lauck, *Problems with Brief Doom Case in Supreme Court*, MO. LAWYERS WEEKLY (March 29, 2022). Although the Court refused to address the merits, it was clearly able to determine the nature of the appellant's arguments, since the Court itself redrafted the appellant's points in a form it found more congenial. 643 S.W.3d at 507 n.4, 508 n.5. The Court obviously believed that resort to the appellant's argument to clarify the intent of his points was improper, since it complained that "[a] deficient point relied on requires the respondent and appellate court to search the remainder of the brief to discern the appellant's assertion and, beyond causing a waste of resources, risks the appellant's argument being understood or framed in an unintended manner." *Id.* at 505. Other cases similarly declare that it is not the court's responsibility to "scour" or "delve into" the argument portion of a brief to determine the nature of an appellant's argument. *Progressive Cas. Ins. Co. v. Moore*, 662 S.W.3d 168, 172 (Mo. App. E.D. 2023); *Calzone v. Maries Cnty. Comm'n*, 648 S.W.3d 140, 145 (Mo. App. S.D. 2022); *Surgery Ctr. Partners, LLC v.*

*Mondelez Int'l, Inc.*, 647 S.W.3d 38, 43 (Mo. App. E.D. 2022); *see also Lollar v. Lollar*, 609 S.W.3d 41, 50 n.3 (Mo. 2020) (Fischer, J., concurring) ("this Court previously has rejected the . . . suggestion that an appellate court may consult the argument section of an appellant's brief to decipher what issues were or were not raised in the point relied on").

The cases holding that a point relied on must be sufficiently clear, without resort to the argument which follows, suggest that appellate judges will stop reading when they encounter a defective point relied on, without reviewing the remainder of an appellant's brief. It is unclear how reviewing the argument section of an appellant's brief is a "waste of resources" – to the contrary, reading *the entirety* of an appellant's brief would seem to be a core function of an appellate judge. Reading the argument section of an appellant's brief does not require judges to "search," "scour," or "delve into" some exotic or obscure material. It is not impermissible "advocacy" for an appellate court to rely on *the appellant's own framing* of their argument – even if that framing appears in the "Argument" section of the brief, rather than in a one-sentence Point Relied On.

Courts have also taken wildly inconsistent approaches when confronted with points which they deem "multifarious" (meaning, that the point raises what are perceived to be multiple separate legal claims). As the Southern District recently explained:

> This Court, in its discretion, may review all, some, or none of a multifarious point relied on. *See, e.g., Fowler v. Missouri Sheriffs' Retirement System*, 623 S.W.3d 578, 582-83 (Mo. banc 2021) (electing to review none of the claims in a multifarious point relied on); *Griffitts v. Old*

15

*Republic Insurance Company*, 550 S.W.3d 474, 478 (Mo. banc 2018) (electing to review only the first of two claims in a multifarious point relied on).

*Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021); *see also*, *e.g.*, *State v. Minor*, 648 S.W.3d 721, 728 (Mo. 2022) (reviewing claim on the merits, despite multifarious point which the Court characterized as "more than a technical violation"); *Lollar v. Lollar*, 609 S.W.3d 41, 45 n.4 (Mo. 2020) (reviewing claim on appeal, despite "multifarious point"); *Eighty Hundred Clayton Corp. v. Lake Forest Dev. Corp.*, 651 S.W.3d 217, 224 (Mo. App. E.D. 2022) (refusing to consider multifarious points). Such seemingly disparate treatment – treating like cases differently – is troubling in a system designed to dispense justice.

The courts' sometimes-draconian enforcement of the points relied on requirement has real-world consequences which frequently appear disproportionate to any trivial procedural deficiencies in an appellant's brief. The *Lexow* case, 643 S.W.3d 501, serves as a paradigm example. In *Lexow*, a worker claimed that he was permanently and totally disabled – meaning, that he had an "inability to return to _any_ employment" (§ 287.020.6 (emphasis added)) due to a combination of work-related and pre-existing injuries. The Labor and Industrial Relations Commission denied the worker's claim for permanent total disability benefits. The Eastern District reversed, concluding that the Commission had applied the wrong legal standard in evaluating the worker's claim. *See Lexow v. Boeing Co.*, No. ED108853, 2021 WL 1880933,

16

at *6 (Mo. App. E.D. May 11, 2021). The Eastern District remanded the case to the Commission, for it to reconsider the worker's entitlement to benefits. *Id.*

While the Court of Appeals' decision in *Lexow* gave the injured worker a renewed opportunity to prove that he was entitled to compensation for a permanent and total disability, that decision was vacated when the Supreme Court granted transfer. *See*, *e.g.*, *City of Harrisonville v. Mo. Dep't of Nat. Res.*, 681 S.W.3d 177, 182 (Mo. 2023). The Supreme Court then dismissed the worker's appeal. This had the effect of leaving in place the Commission's denial of permanent and total disability benefits – a decision which the Eastern District had found to be legally erroneous. The Supreme Court stated that it was "cognizant of the ramifications of dismissing the appeal: Claimant loses the remand granted by the court of appeals." *Lexow*, 643 S.W.3d at 509. Although the Court recognized that it was denying an injured worker the opportunity to prove his entitlement to substantial disability benefits, the Court concluded that the adverse effects on the worker were outweighed by the need to rigorously enforce the Court's point-relied-on rule. *Id.* An observer might reasonably question the Court's balancing of the competing interests at stake.

Obviously, there are cases in which an appellant's briefing is so patently deficient that it is impossible to determine from the briefing what legal claims the appellant is attempting to assert, or the legal or factual basis for those claims. For example, this Court occasionally receives briefs with fact statements containing no meaningful citations to the record, or legal arguments containing no citation to relevant authority; we also receive briefs

17

which completely fail to acknowledge or challenge the grounds on which the circuit court or an administrative agency actually issued an adverse ruling. In such cases, it is understandable that appellate courts refuse to construct an argument on the appellant's behalf. But where the only defect in an appellant's briefing is the failure to adequately draft a single, awkwardly-formatted sentence, which is required to be simultaneously concise and comprehensive, I question whether any meaningful purpose is served by refusing to consider the appellant's claims on the merits.

As noted above, many cases finding points to be defective follow a familiar pattern which the majority repeats here: pointing out the purported defects, but then proceeding to address the appellant's arguments on their merits "*ex gratia*." Some judges have decried this practice, contending that "reiterat[ion of] the importance of the Rule 84.04 briefing rules . . . without consequence implicitly condones continued violations and undermines the mandatory nature of the rules." *Alpert v. State*, 543 S.W.3d 589, 601 (Mo. 2018) (Fischer, C.J., dissenting). Rather than justifying stricter enforcement, I believe a different lesson can be drawn from the multitude of cases which decide the merits, despite points deemed deficient. The fact that Missouri courts have repeatedly been able to fairly and efficiently decide the merits of appeals, even in the face of points they find inadequate, suggests that punctiliously proper points relied on are unnecessary to the appellate decision making process. The experience of the federal courts, and of the courts in every other State in the Union, likewise suggests that points relied on are an unneeded procedural complexity.

A vast "jurisprudence of the point relied on" has been developed, and reiterated *ad nauseum*, for more than sixty years. If anything could fairly be labeled a "waste of resources," it may be the considerable effort which appellants have expended for decades attempting to comply with the points-relied-on requirement, and the copious caselaw in which judges have endeavored to explain, and enforce, that requirement. It is high time that the Supreme Court give serious consideration to abandoning the point-relied-on requirement, and bringing Missouri appellate practice into conformity with the rest of the Nation.

## II.

Although the circuit court's judgment does not rely on the issue, the House argues that the judgment can be affirmed on the basis that Pedroli lacks standing to sue.

Contrary to the majority, I conclude that Pedroli has standing under the Sunshine Law, both as an "aggrieved person" and as a "citizen of this state."

Section 610.027.1 provides that "[a]ny aggrieved person, taxpayer to, or citizen of, this state, or the attorney general or prosecuting attorney, may seek judicial enforcement of the requirements of sections 610.010 to 610.026." In interpreting this provision, we must remember that the General Assembly has directed that the provisions of the Sunshine Law should be liberally construed:

> It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law. Sections 610.010 to 610.200 shall be liberally construed and their exceptions strictly construed to promote this public policy.

§ 610.011.1.

19

Applying a liberal construction to § 610.027.1, Pedroli has standing to bring this action.

## A.

Although Pedroli submitted his Sunshine request on behalf of the Sunshine and Government Accountability Project, his law firm, and an unnamed "client" whose identity had been misappropriated, *Pedroli* is the one who actually submitted the request, to further <u>his</u> investigations. Although no Missouri decision expressly addresses the issue, caselaw applying the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, consistently holds that an attorney who makes a FOIA request, on behalf of either a named or un-named client, has standing to sue in the attorney's own name to allege a FOIA violation. As one court explained:

> [T]here is nothing unusual about an attorney or a law firm making a FOIA request in their own right concerning a client matter. ... [I]t is irrelevant, both practically and legally, that the attorney may not have a personal interest in the requested documents or that the identity of the attorney's client is either known to or knowable by the agency from the nature of the request.

*Osterman v. U.S. Army Corps of Eng'rs*, No. CV13 -1787- BJR, 2014 WL 5500396, at *2, *3 (W.D. Wash. Oct. 30, 2014); *see also, e.g.*, *Snarr v. Fed. Bureau of Prisons*, No. CV 19-1421 (ABJ), 2020 WL 3639708, at *4 (D.D.C. July 6, 2020) (holding that, "if an attorney submits a FOIA request on behalf of a client, and the client's name does not appear on the request, only the attorney has standing to pursue relief under the statute"; citations omitted); *Mahtesian v. U.S. Off. of Pers. Mgmt.*, 388 F. Supp.2d 1047, 1048 (N.D. Cal. 2005) (same); *Weikamp v. U.S. Dep't of Navy*, 175 F. Supp.3d 830, 834–35

(N.D. Ohio 2016) (holding that attorney prosecuting FOIA action in attorney's own name, on behalf of an identified client, could recover attorney's fees since action was prosecuted on client's behalf); *Dorsen v. U.S. Sec. & Exch. Comm'n*, 15 F. Supp.3d 112, 117 (D.D.C. 2014) (same).

If we were to apply the federal caselaw, Pedroli would be considered a requester of the withheld information. Viewed as *the requester*, Pedroli would plainly be an "aggrieved person" within the meaning of § 610.027.1, since he contends that the House has failed to fully comply with his request, and produce all of the information to which he is entitled.

**B.**

But even if Pedroli is not deemed an "aggrieved person," § 610.027.1 also authorizes suit by "[a]ny . . . taxpayer to, or citizen of, this state[.]" The summary judgment record establishes that Pedroli is a resident of St. Louis County, is licensed to practice law in Missouri, and practices out of his law firm's offices in Clayton. These facts establish Pedroli's status as a "citizen" of Missouri (and likely also supports the inference that he is a Missouri taxpayer).

The term "citizen" is not defined in the Sunshine Law. "'Absent express definition, statutory language is given its plain and ordinary meaning, as typically found in the dictionary.'" *Cedar Cnty. Comm'n v. Parson*, 661 S.W.3d 766, 776 (Mo. 2023) (quoting *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. 2018) (in turn quoting *State v. Brookside Nursing Ctr., Inc.*, 50 S.W.3d 273, 276 (Mo. 2001))). The dictionary provides multiple meanings for the word "citizen":

**1 a :** an inhabitant of a city or town; *esp* **:** one that is entitled to the civic rights and privileges of a freeman

**b :** a townsman as contrasted with a rustic <both *~s* and peasants>

**2 a :** a member of a state **:** one who is claimed as a member of a state

**b :** a native or naturalized person of either sex who owes allegiance to a government and is entitled to reciprocal protection from it and to enjoyment of the rights of citizenship <all persons born or naturalized in the U.S., and subject to the jurisdiction thereof, are *~s* of the U.S,. and of the state wherein they reside – *U.S. Constitution>* - compare ALIEN, SUBJECT

**3 :** a resident in or member of a community or institution (as a school) – compare INHABITANT

**4 :** a civilian as opposed to a soldier, policeman, or other specialized servant or functionary of the state **:** a commoner without the interests or affiliations of any special group <not only by professionals but also by parents and *~s* – J.B. Conant>

WEBSTER'S THIRD NEW INT'L DICTIONARY 411 (2002); *see also*

https://www.merriam-webster.com/dictionary/citizen; *Pohlabel v. State*, 268

P.3d 1264, 1270 (Nev. 2012) ("One way to read the word 'citizen' is as a

'generic substitute for "accused," "person," "defendant," or "individual."'

. . . Similarly, the word 'citizen' may be used in reference to a civilian, a

person who is not a specialized servant of the state."; citations omitted).

While one meaning of the term "citizen" refers to a formal legal status

conferred by a nation-state, the dictionary provides that the term "citizen" can

also simply refer to "an inhabitant of a city or town," "a resident in or member

of a community or institution," or "a civilian as opposed to a soldier,

policeman, or other specialized servant or functionary of the state." Under

§ 610.011.1, we are instructed to "liberally construe[ ]" the term, to promote the Sunshine Law's overriding policy of governmental openness and transparency. Applying a broad reading to the phrase "citizen," Pedroli's status as a St. Louis County resident, and a Missouri-licensed lawyer practicing from a law firm based in Missouri, is sufficient to establish his entitlement to sue as a "citizen of this state" under § 610.027.1.

Although it is unnecessary to decide the question, it appears that those same allegations would support the reasonable inference that Pedroli is also a "taxpayer to this state." Borrowing the words of Benjamin Franklin, "in this world nothing can be said to be certain, except death and taxes." Letter to Jean-Baptiste Le Roy (Nov. 13, 1789). Unless he were a scofflaw, Pedroli would necessarily be paying taxes to the State as a Missouri resident, business owner, and worker.

In other jurisdictions in which open records and open meetings laws grant standing to "any citizen" to file suit, courts have held that the phrase must be broadly construed, to further the laws' overriding policy of promoting government transparency. In the words of Tennessee's appellate court, "where the statute says 'any citizen' may bring suit to enforce the Sunshine Law, the General Assembly must be taken at its word." *Mayhew v. Wilder*, 46 S.W.3d 760, 769 (Tenn. App. 2001); *see also Schauer v. Grooms*, 786 N.W.2d 909, 922 (Neb. 2010) ("Through the Open Meetings Act, the Legislature has granted standing to a broad scope of its citizens who would lack the pecuniary interest necessary under common law, so that they may help police the public policy embodied by the act."; footnote omitted); *Freemantle v. Preston*, 728

23

S.E.2d 40, 44-45 (S.C. 2012); *but see Pueblo Sch. Dist. No. 60 v. Colo. High Sch. Activities Ass'n*, 30 P.3d 752, 753–54 (Colo. App. 2000) (although open meetings law authorizes suit by "any citizen," holding that "standing is not a requirement that may be abrogated by statute. . . . While a statute may purport to grant a cause of action to a large group of persons, a plaintiff must, nevertheless, suffer an injury in fact.").

Citing *Sweeney v. Ashcroft*, 652 S.W.3d 711 (Mo. App. W.D. 2022), and *Eames v. Eames*, 463 S.W.2d 576 (Mo. App. 1971), the majority contends that Pedroli's status as a Missouri resident and Missouri-licensed professional and business owner is insufficient to render him a Missouri "citizen." Neither case requires that the term "citizen," as used in the Sunshine Law, be construed to exclude Pedroli. In *Sweeney*, the Court rejected the argument that "citizen" should be read "to mean *only* 'Missouri resident,' or to even require that one be a 'Missouri resident[.]'" 652 S.W.3d at 725. While *Sweeney* held that "citizen" did not *require* Missouri residence, it does not address whether Missouri residence, when combined with Missouri employment and business ownership, is sufficient to render an individual a Missouri citizen. Moreover, *Sweeney* recognizes that "the term 'citizen' is not readily susceptible to a single, settled dictionary meaning, and is instead a term with varied accepted meanings depending on the context in which the term is used." *Id.* And in *Eames*, the Court recognized that "the word 'citizen' may under some definitions of it, connote 'residence.'" 463 S.W.2d at 578.

The majority also notes that neither Pedroli's petition, nor his summary judgment briefing, pleads or proves that he is a Missouri "citizen." But

Pedroli's status as a Missouri "citizen" is a question of law, not a question of fact, which Pedroli was not required to plead or prove. *See, e.g.*, *Baker v. Crossroads Acad.*, 648 S.W.3d 790, 801 (Mo. App. W.D. 2022) (noting that "'conclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted'" (citation omitted)); *Metro. Nat'l Bank v. Commonwealth Land Title Ins. Co.*, 456 S.W.3d 61, 66 (Mo. App. S.D. 2015) ("A legal conclusion brandished as a statement of fact must be disregarded in evaluating a motion for summary judgment, even if that statement is admitted by non-movant."; citation omitted). Pedroli was required only to plead *the facts* from which the legal conclusion of his citizenship could be derived – which he did.

Pedroli's right to sue under § 610.027.1 establishes his standing to sue not only for violations of the Sunshine Law, but also to seek declaratory relief.

> In a declaratory judgment, the criterion for standing is whether the plaintiff has a legally protectable interest at stake. A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question ***or if the plaintiff's interest is conferred by statute***.

*St. Louis Cnty. v. State*, 424 S.W.3d 450, 453 (Mo. 2014) (emphasis added; citations omitted); *accord*, *Cope v. Parson*, 570 S.W.3d 579, 583 (Mo. 2019) (standing for declaratory judgment action "exists 'if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute.'" (quoting *Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. 2011))).

25

## C.

The House argues that § 610.027.1 does not grant standing to *any* "citizen" or "taxpayer," but only to those "citizens" or "taxpayers" who are "aggrieved" by a Sunshine Law violation. I disagree. Section 610.027.1 grants standing to "[a]ny aggrieved person, taxpayer to, or citizen of, this state, or the attorney general or prosecuting attorney." The word "aggrieved" in this phrase modifies only the term "person" – it does not modify the terms "taxpayer" or "citizen." In arguing to the contrary, the House cites to the "Series-Qualifier Canon" recognized in *State v. Champagne*, 561 S.W.3d 869 (Mo. App. S.D. 2018):

> "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series."

*Id.* at 873 (quoting Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012)).

The "Series-Qualifier Canon" is inapplicable here, however, because § 610.027.1 does not contain a series of nouns or verbs in a "parallel construction." Instead, the listing of potential litigants in § 610.027.1 describes three separate classes of potential plaintiffs, using different grammatical structures: (1) "Any aggrieved person"; (2) "[a]ny . . . taxpayer to, or citizen of, this state"; or (3) "the attorney general or prosecuting attorney." The term "aggrieved" plainly does not apply to all three members of this series (since there is no requirement that the attorney general be "aggrieved"). Notably, the three categories are described using different

syntax, and the second category – which is directly at issue here – includes its own modifier ("this state") which plainly does not apply to the first category ("aggrieved person").

Rather than the "Series-Qualifier Canon," the applicable canon of construction is the "Nearest-Reasonable-Referent Canon":

> When the syntax involves *something other than a parallel series of nouns or verbs*, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.

Scalia & Garner, READING LAW § 20 (emphasis added). Under this principle, "aggrieved" would refer only to "person," not to "citizen" or "taxpayer."

Beyond the relevant canon of statutory construction, there are additional good reasons to apply the term "aggrieved" only to the word "person." Section 1.020(12) states that, "[a]s used in the statutory laws of this state . . . [t]he word 'person' may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations." Given the breadth of the word "person," if "aggrieved" were applied as the House advocates, the words "taxpayers" and "citizens" would add nothing to § 610.027.1's litany of potential suitors, because *every* "aggrieved taxpayer" or "aggrieved citizen" would *also* be an "aggrieved person." The words "taxpayer" and "citizen" would become completely meaningless. Yet, the Missouri Supreme Court has repeatedly instructed that "'[a]ll provisions of a statute must be harmonized and every word, clause, sentence, and section thereof must be given some meaning.' . . . Courts may not interpret statutes to render any provision a nullity because doing so would not give effect to the

27

plain language of the statute." *State v. Knox*, 604 S.W.3d 316, 322 (Mo. 2020). *See also, e.g., State ex rel. Swoboda v. Mo. Comm'n on Human Rights*, 651 S.W.3d 800, 807 (Mo. 2022) ("As a matter of presumption, the legislature . . . intend[s] all words used to have meaning, and . . . does not include unnecessary or superfluous language"; citations omitted).

Unlike the reading championed by the House, interpreting the adjective "aggrieved" to modify *only* "person" gives separate meaning to each term used in the first two categories in § 610.027.1: the statute would grant a right to sue to (1) any person directly affected by a Sunshine Law violation (an "aggrieved person"); (2) any person who pays Missouri taxes, whether a resident or not; and (3) to any Missouri resident.

It is significant in this regard that the General Assembly has referred to "aggrieved persons" and "aggrieved parties" in a large number of statutes, to define the class of persons entitled to prosecute administrative or court litigation.[4] The Sunshine Law is the *only* Missouri statute which *also* authorizes suit by "taxpayers" and "citizens" in addition to "aggrieved persons." The House's argument fails to give meaning to every component of this unusually-phrased right-to-sue provision.

---

[4] § 89.100 ("any person aggrieved"); § 109.070.1 ("[a]ny person aggrieved"); § 137.275 ("[e]very person who thinks himself aggrieved by the assessment of his property"); § 190.171 ("[a]ny person aggrieved"); § 260.235 ("[a]ny person aggrieved"); § 287.965.1 ("[a]ny person or organization aggrieved"); § 320.265 ("[a]ny person aggrieved"); § 386.330.2 ("any person or corporation aggrieved"); § 388.290.4 ("any person or party aggrieved, whether stockholder or not"); § 409.846.1 ("[a]ny person aggrieved"); § 452.400.3 ("the aggrieved person"); § 516.500 (referring to persons or parties aggrieved); § 536.100 ("a party aggrieved"); § 622.260.2 ("any person or corporation aggrieved"); § 630.725.2, .4 ("[a]ny person aggrieved"); § 643.600, 5.7(a), 6.4(a) ("[a]ny person aggrieved"); § 701.379.1, .2 ("[a]ny aggrieved person," "[a]ny person aggrieved").

28

Finally, it must be remembered that § 610.027.1 creates a cause of action not only for Sunshine Law violations involving *records requests*, but also for alleged violations involving *meetings* which were unlawfully closed or inadequately announced. It would be substantially more difficult to prove that a specific person was "aggrieved" by the closure of a meeting; hence, the legislature has granted standing to "any . . . taxpayer to, or citizen of, this state."

I would accordingly reject the House's standing arguments, and address Pedroli's arguments on their merits.

### III.

On the merits, I agree with Pedroli that House Rule 127 violates Article III, § 19(a) of the Missouri Constitution.

House Rule 127 permits (but does not require) Representatives to "keep constituent case files, and records of the caucus of the majority or minority party of the house that contain caucus strategy, confidential." "Constituent case files" include any correspondence between a Member of the House and the constituent, or between a Member and a third party concerning the constituent's concerns.

House Rule 127 was adopted in reliance on the rulemaking authority granted to both houses of the General Assembly by Article III, § 18 of the Missouri Constitution. Section 18 provides that "[e]ach house . . . may determine the rules of its own proceedings, except as herein provided . . . ."

Pedroli contends that House Rule 127 is inconsistent with Article III, § 19(b) of the Missouri Constitution, which was adopted by voters as part of a

29

popular initiative petition at the 2018 general election. Section 19(b), and the related § 19(c), provide in relevant part:

> (b)  Legislative records shall be public records and subject to generally applicable state laws governing public access to public records, including the Sunshine Law. Legislative records include, but are not limited to, all records, in whatever form or format, of the official acts of the general assembly, of the official acts of legislative committees, of the official acts of members of the general assembly, of individual legislators, their employees and staff, of the conduct of legislative business and all records that are created, stored or distributed through legislative branch facilities, equipment or mechanisms, including electronic. . . .

> (c)  Legislative proceedings, including committee proceedings, shall be public meetings subject to generally applicable law governing public access to public meetings, including the Sunshine Law. . . .

Section 19(b) provides that legislative records "shall be . . . subject to generally applicable state laws governing public access to public records, including the Sunshine Law." The "legislative records" subject to § 19(b) include "all records, in whatever form or format, . . . of individual legislators, their employees and staff." But for House Rule 127, Article III, § 19(b) plainly makes constituent records subject to the generally applicable provisions of the Sunshine Law.

The House argues that the "legislative records" subject to § 19(b) include only records relating to "official acts" of the House, its committees, or individual legislators. Its argument ignores that § 19(b)'s definition of "legislative records" refers to "official acts" three times: in referring to (1) "the official acts of the general assembly"; (2) "the official acts of legislative committees"; and (3) "the official acts of members of the general assembly." The provision then *goes on* to specify that "all records . . . of individual

30

legislators, their employees and staff" are *also* included within the definition of "legislative records."  Nothing in this further category of "legislative records" limits those records to the "official acts" of individual legislators; and to construe the phrase in that way would make it redundant of the earlier description of "all records . . . of the official acts of members of the general assembly."  The Missouri Supreme Court has instructed that "'[e]very word contained in a constitutional provision has effect, meaning, and is not mere surplusage.'"  *State ex rel. Dep't of Health & Senior Servs. v. Slusher*, 638 S.W.3d 496, 498 (Mo. 2022) (quoting *State v. Honeycutt*, 421 S.W.3d 410, 415 (Mo. 2013)).  We cannot delete § 19(b)'s reference to "all records . . . of individual legislators, their employees and staff" from the constitutional provision, by interpreting the phrase to be redundant of the earlier reference to "all records . . . of the official acts of members of the general assembly."

The House argues that "Pedroli's entire case is based on a misreading of Article III, Section 19(b)."  According to the House, § 19(b) merely designates "legislative records" to be "public records" as defined by § 610.010(6).  The House then points out that, "[o]f course, 'public' records can be 'open' or 'closed' pursuant to Section 610.021, RSMo."

Section 19(b) does more than simply designate "legislative records" to be "public records."  First, it does not appear that § 19(b) was necessary to designate legislative records as "public records," since the Sunshine Law *already* specified that a "public record" included "any record . . . retained by or of any public governmental body," and "public governmental body" was defined to include "any legislative, administrative or governmental entity

31

created by the Constitution or statutes of this state." §§ 610.010(4), (6). Simply denominating "legislative records" to be "public records" was unnecessary given the existing statutory definitions. We must presume, however, that a constitutional amendment was intended to have some meaningful effect.

> "The fundamental rule of constitutional construction is that courts must give effect to the intent of the people in adopting the amendment." Amendments are presumed to have intended to effect some change in the existing law. This is because "[t]o amend a [provision] and accomplish nothing from the amendment would be a meaningless act."

*Pestka v. State*, 493 S.W.3d 405, 411 (Mo. 2016) (citations omitted).

The House's argument that § 19(b) merely denominates its records as "public records" also ignores half of the first sentence of § 19(b). That sentence does not merely decree that "[l]egislative records shall be public records"; it *goes on* to state that those records "shall be . . . subject to generally applicable state laws governing public access to public records, including the Sunshine Law." This second phrase makes legislative records subject to disclosure under the Sunshine Law and other public access statutes, unless the terms of those "generally applicable state laws" themselves exempt the relevant records. Again, "'this Court must assume that every word contained in a constitutional provision has effect, meaning, and is not mere surplusage.'" *Pestka*, 493 S.W.3d at 409 (citation omitted).

House Rule 127 cannot nullify § 19(b)'s directive making legislative records subject to the generally applicable provisions of the Sunshine Law. As the Supreme Court recognized in *State ex inf. Danforth v. Cason*, 507 S.W.2d

32

405 (Mo. 1973), "[w]hile Art. III, § 18 does confer on the senate the right to establish its own procedural rules, the section expressly limits that right by providing that such authority is subject to exceptions provided in the Constitution itself." *Id*. at 413. *Cason* held that a Senate rule which purported to limit the authority of the Lieutenant Governor to serve as the Senate's presiding officer was invalid, because it limited the authority given to the Lieutenant Governor in Article IV, § 10 of the Constitution. *Id*. at 413-14.

House Rule 127 has the effect of exempting certain legislative records from the Sunshine Law, despite § 19(b)'s express directive that "[l]egislative records shall be . . . subject to generally applicable state laws governing public access to public records, including the Sunshine Law." Because it is inconsistent with § 19(b), House Rule 127 is unconstitutional, and cannot be invoked to justify the withholding of information which is otherwise responsive to a Sunshine Law request, and which is not exempted from disclosure by the Sunshine Law itself.

Our decision in *Progress Missouri, Inc. v. Missouri Senate*, 494 S.W.3d 1 (Mo. App. W.D. 2016), is not to the contrary. In *Progress Missouri*, this Court held that it had no authority to declare invalid a Senate Rule limiting the right of members of the public to record committee hearings. We reached this result even though a provision of the Sunshine Law, § 610.020.3, arguably gave the public greater rights to record proceedings than the Senate Rule. We held that the rulemaking authority granted to the Senate by Article III, § 18 placed the conduct of Senate proceedings in the Senate's sole authority, with which the courts could not interfere. We explained:

> Missouri's Constitution expressly provides that the Senate "may determine the rules of its own proceedings." Mo. Const. Art. III, § 18. This authority is only limited by "exceptions provided in the Constitution itself." *State ex inf. Danforth v. Cason*, 507 S.W.2d 405, 413 (Mo.1973). Therefore, insofar as Senate Rule 96 is a rule governing its own proceedings, it flows from the Senate's exercise of the commitment of power granted to it by the Missouri Constitution and is not reviewable by this court.

494 S.W.3d at 6.

*Progress Missouri* did not reject or qualify the Missouri Supreme Court's holding in *Cason* that legislative rules can be declared invalid where those rules are inconsistent with other specific provisions of the Constitution. (Even if the Court of Appeals in *Progress Missouri* had wanted to overrule the Supreme Court's decision in *Cason*, it <u>could not do so</u> under Article V, § 2 of the Missouri Constitution.) Consistent with *Cason*, *Progress Missouri* recognizes that the rulemaking authority of the House and Senate are "limited by 'exceptions provided in the Constitution itself.'" 494 S.W.3d at 6 (quoting *Cason*, 507 S.W.2d at 413). At the time *Progress Missouri* was decided, there simply was no relevant "constitutional exception" to Article III, § 18, because Article III, §§ 19(b) and (c) had not yet been adopted.

That is the critical distinction between this case and *Progress Missouri*: *Progress Missouri* pre-dated the People's adoption of Article III, §§ 19(b) and (c). It seems evident that §§ 19(b) and (c) were adopted, in large measure, to respond to the *Progress Missouri* decision, and overrule its holding that the Missouri Senate and House had sole and unreviewable discretion, in the exercise of their rulemaking power, to exempt themselves from generally applicable public-access statutes, including the Sunshine Law.

The House's argument – that it retains rulemaking authority to exempt its records from the Sunshine Law, despite the People's adoption of Article III, §§ 19(b) and (c) – would render those constitutional amendments meaningless. Under the *Progress Missouri* decision, the House and Senate enjoyed the plenary power, by rule, to exempt themselves from the requirements of the Sunshine Law. According to the House, that state of affairs persists, despite the People's adoption of a constitutional amendment specifying that House records "shall be public records and subject to generally applicable state laws governing public access to public records, including the Sunshine Law."

The House's argument runs headlong into two well-established, and related, canons of interpretation. First, that argument is inconsistent with the precept that "[a]mendments are presumed to have intended to effect some change in the existing law," and should not be read to be "'meaningless act[s],'" "'accomplish[ing] nothing.'" *Pestka*, 493 S.W.3d at 411 (citations omitted).

Besides our obligation to interpret constitutional amendments so that they have practical significance, we are also directed to consider the circumstances existing at the time an amendment was adopted:

> "It is settled by very high authority that in placing a construction on a Constitution or any clause or part thereof, a court should look to the history of the times and examine the state of things existing when the Constitution was framed and adopted, in order to ascertain the prior law, the mischief, and the remedy. A constitutional provision must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them."

35

*State ex rel. McPike v. Hughes*, 199 S.W.2d 405, 408 (Mo. 1947) (citation omitted). "In construing a statute or constitutional provision, a study of pre–existing conditions and a consideration of the mischief to be remedied by the enactment of the statute or constitutional provision lend great aid in its proper understanding." *State ex rel. City of Boonville v. Hackmann*, 240 S.W. 135, 136 (Mo. 1922); *accord, State ex rel. O'Connor v. Riedel*, 46 S.W.2d 131, 133–34 (Mo. 1932).

In this case, the adoption of Article III, §§ 19(b) and (c) can only be read as the People's response to the *Progress Missouri* decision, which gave the House and Senate sole authority to determine what level of public access they would permit.

In a single paragraph in its Brief, the House suggests that House Rule 127 has the effect of placing constituent records within the exemption found in § 610.021(14) for "[r]ecords which are protected from disclosure by law." The House cites no authority to support its argument that House Rule 127 has the effect of "protect[ing] [constituent communications] from disclosure by law." And the caselaw I have discovered is contrary to the House's contention that House Rule 127 constitutes the sort of "law" that could shield records from disclosure. This Court has stated on multiple occasions that § 610.021(14) only exempts records from the Sunshine Law if they are rendered confidential *by statute*.

> "The term 'law' has a particular meaning in this context: It refers to statutes." Thus, "[t]he mandate of § 610.015 is that public records be open to the public for inspection and duplication unless a statute prohibits their disclosure."

*Am. Civil Liberties Union of Mo. Found. v. Mo. Dep't of Corrections*, 504 S.W.3d 150, 155 (Mo. App. W.D. 2016) (quoting *State ex rel. Mo. Local Gov't Ret. Sys. v. Bill*, 935 S.W.2d 659, 665 (Mo. App. W.D. 1996), and *Oregon Cnty. R–IV Sch. Dist. v. LeMon*, 739 S.W.2d 553, 557 (Mo. App. S.D. 1987)). In *Pulitzer Publishing Co. v. Missouri State Employees' Retirement System*, 927 S.W.2d 477 (Mo. App. W.D. 1996), we rejected the argument that an *administrative* rule could have the effect of shielding the promulgating agency's records from disclosure under § 621.021(14). While the present case involves a rule adopted by a legislative body under rulemaking authority granted by the Constitution, the concerns we expressed in *Pulitzer Publishing* are equally applicable here: to give effect to a confidentiality rule adopted by the very body whose records were sought "would be to permit . . . any . . . public governmental body to defeat the legislature's declared public policy of open meetings and records merely by adopting a regulation designating the body's meetings and records confidential." *Id*. at 481. In the absence of any argument from the House as to why this caselaw does not foreclose its reliance on § 610.021(14), I would reject the House's contention that House Rule 127 makes constituent records "protected from disclosure by law."

Finally, the House argues that the consistency of House Rule 127 with Article III, § 19(b) is a non-justiciable "political question." However, as made clear by *Cason*, the courts <u>do</u> have the authority to review – and invalidate – legislative rules if those rules violate other provisions of the Missouri Constitution. That was the situation in *Cason*, and it is the situation here. While *Progress Missouri* found a challenge to the validity of a Senate rule to

be nonjusticiable, that was because the challengers in that case could point to no *constitutional provision* with which the legislative rule conflicted. Pedroli's argument is founded in a specific constitutional provision post-dating *Progress Missouri*. This also serves to distinguish *Des Moines Register & Tribune Co. v. Dwyer*, 542 N.W.2d 491, 501-03 (Iowa 1996), and *Taylor v. Worrell Enterprises, Inc.*, 409 S.E.2d 136, 138-39 (Va. 1991). Each case addressed only the state's open records *statutes*; neither case involved a provision of the State *constitution* which itself designated legislative records as public records subject to "generally applicable" access law.

For all of the foregoing reasons, I would hold that the House was not entitled to rely on House Rule 127 to withhold constituent records from Pedroli. The House Rule cannot exempt records from disclosure, where those records are otherwise subject to disclosure under Missouri's generally applicable public-access laws.

### Conclusion

Because Pedroli has standing to prosecute this case, and because he has established that the House violated the Sunshine Law in reliance on an unconstitutional legislative rule, I would reverse the judgment of the circuit court, and remand for further proceedings.

_Alok Ahuja, Judge_

**Appendix to Dissenting Opinion**

**Cases decided between July 1, 2023, and December 31, 2023,
finding defects in an appellant's points relied on**

o  *City of Harrisonville v. Mo. Dep't of Natural Resources*, 681 S.W.3d 177 (Mo. 2023) (plurality opinion)

o  *Harper v. Springfield Rehab & Health Care Ctr./NHC Health*, No. SC100006, 2023 WL 8085221, at *3 n.5 (Mo. Nov. 21, 2023)

o  *Matter of Marvin*, No. WD86118, 2023 WL 8721818, at *4-*5 (Mo. App. W.D. Dec. 19, 2023)

o  *Dodson v. Aldrich*, 681 S.W.3d 727, 730-732 (Mo. App. W.D. 2023)

o  *Interest of J.W.C.*, 680 S.W.3d 577, 584 (Mo. App. S.D. 2023)

o  *State v. Haneline*, 680 S.W.3d 550, 561-62 (Mo. App. S.D. 2023)

o  *Brown v. Brown*, 680 S.W.3d 507, 522 (Mo. App. W.D. 2023)

o  *Lee v. Lee*, 680 S.W.3d 501, 506 (Mo. App. W.D. 2023)

o  *Matter of A.K.*, 679 S.W.3d 498, 512 n.3 (Mo. App. E.D. 2023)

o  *Crisp v. Mo. School for the Deaf*, 681 S.W.3d 650, 658-59 (Mo. App. W.D. 2023)

o  *Collins v. Century Ready Mix, Inc.*, 678 S.W.3d 178, 191 n.9 (Mo. App. W.D. 2023)

o  *McNeese v. Wheeler*, 677 S.W.3d 907, 911-12 (Mo. App. W.D. 2023)

o  *Sparks v. Sparks*, 677 S.W.3d 903, 906-07 (Mo. App. W.D. 2023)

o  *Z.R. by and through T.R. v. Kansas City Pediatrics, LLC*, No. WD85751, 2023 WL 7136352, at *4 n.9 (Mo. App. W.D. Oct. 31, 2023)

o  *Malin v. Cole Cnty. Prosecuting Atty.*, 678 S.W.3d 661, 671 n.7 (Mo. App. W.D. 2023)

o  *State v. Meding*, 678 S.W.3d 163, 164-65 (Mo. App. E.D. 2023)

o  *Girgis v. Girgis*, 676 S.W.3d 510, 514 n.2 (Mo. App. E.D. 2023)

o  *Sprueill v. Lott*, 676 S.W.3d 472, 476-77 (Mo. App. S.D. 2023)

- *State v. McCoy*, 678 S.W.3d 125, 131 (Mo. App. E.D. 2023)

- *State v. Edmond*, 675 S.W.3d 235, 243 (Mo. App. E.D. 2023)

- *Amlin v. State*, 677 S.W.3d 585, 591 n.3 (Mo. App. S.D. 2023)

- *Kurz v. Kurz*, 674 S.W.3d 533, 536-37 (Mo. App. S.D. 2023)

- *Wood v. Millsap & Singer, P.C.*, 677 S.W.3d 876, 884 (Mo. App. S.D. 2023)

- *Franco v. Lester E. Cox Med. Ctrs.*, 677 S.W.3d 581, 583-84 (Mo. App. S.D. 2023)

- *Jackson v. Mo. State Bd. of Nursing*, 673 S.W.3d 917, 920 n.4 (Mo. App. W.D. 2023)

- *Roe v. Darden Restaurants, Inc.*, 677 S.W.3d 568, 574-76 (Mo. App. W.D. 2023)

- *Herrmann v. Div. of Emp't Security*, 673 S.W.3d 889, 891 n.2 (Mo. App. W.D. 2023)

- *Puetz v. Rice*, 675 S.W.3d 652, 656 (Mo. App. E.D. 2023)

- *ACWSTL, LLC v. Gladney*, 673 S.W.3d 550, 552-53 (Mo. App. E.D. 2023)

- *Ashby v. Woodridge of Mo., Inc.*, 673 S.W.3d 537, 549 n.8 (Mo. App. S.D. 2023)

- *Ciesemier v. Dir. of Dep't of Pub. Safety*, 673 S.W.3d 877, 881 n.2 (Mo. App. W.D. 2023)

- *Starcher v. Div. of Emp't Security*, 672 S.W.3d 861, 863-64 (Mo. App. W.D. 2023)

- *Auman v. Richard*, 672 S.W.3d 277, 281 (Mo. App. W.D. 2023)

- *Maxwell v. Div. of Emp't Security*, 671 S.W.3d 742, 748-49 (Mo. App. W.D. 2023)

- *Lewis v. Lewis*, 671 S.W.3d 734, 738 n.3 (Mo. App. W.D. 2023)